FT. WORTH & D. C. RY. CO. v. GATEWOOD. (No. 8348.)

(Court of Civil Appeals of Texas. Ft. Worth. March 25, 1916. Rehearing Denied May 6, 1916.)

1. EVIDENCE ⬤⟿481(3)—OPINION—DELAY IN TRANSPORTATION—LAW AND FACT.

In an action against a railroad for delay in transporting live stock, testimony of a witness, with 25 or 30 years' experience, who knew the distance of the shipment and had traveled with it, as to what he considered a reasonable time within which to transport the live stock in question, was inadmissible as an opinion on a mixed question of law and fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2251, 2254; Dec. Dig. ⬤⟿481(3).]

2. EVIDENCE ⬤⟿497 — OPINION — VALUE OF PROPERTY—LAW AND FACT.

Testimony of a cattleman, who had inspected the stock in question at destination, as to the difference between their value and what it would have been had they been brought on without delay, was inadmissible as an opinion on a mixed question of law and fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2285–2288; Dec. Dig. ⬤⟿497.]

3. EVIDENCE ⬤⟿481(3)—OPINION—LAW AND FACT.

It was error to permit the shipper, a veterinary surgeon, and another, to testify that the cattle should not have been held side-tracked in the cars for more than an hour while the cars were being repaired, the testimony being opinion on a mixed question of law and fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2251, 2254; Dec. Dig. ⬤⟿481(3).]

4. CARRIERS ⬤⟿228(3) — CARRIAGE OF LIVE STOCK—NEGLIGENCE—EVIDENCE—CUSTOM.

Testimony, to rebut the imputation of the road's negligence in failing to have employés present in its yards ready to make heavy repairs as soon as the necessity therefor was dis-

covered, that other roads operating in the city where the delay occurred kept no such employés on hand at night, but depended on calling them whenever their services were needed, was admissible, since unless the conduct of a business in a certain manner is negligence per se, proof that others, in the same line of business, are in the custom of following the same course is admissible, as tending to show that the method adopted is not negligent.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 960; Dec. Dig. ⬤⟿228(3).]

5. APPEAL AND ERROR ⬤⟿843(2)—REVIEW—MATTERS UNNECESSARY TO DECISION.

In an action against the initial and connecting carriers of a shipment of live stock, where the judgment was in favor of the connecting road, and no complaint made of it, the question of the admissibility of testimony of plaintiff that he signed without reading the written contract of shipment, limiting the initial carrier's liability for damages to the cattle to injuries sustained on its own line, became immaterial and unnecessary to be decided.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3331; Dec. Dig. ⬤⟿843(2).]

6. CARRIERS ⬤⟿230(8) — CARRIAGE OF LIVE STOCK—ACTION—INSTRUCTION.

In an action against a carrier of live stock for delay in transporting a shipment, defendant's contention, supported by evidence, that after the arrival of the shipment at a connecting point it repaired defective cars and delivered to the connecting road as quickly as possible under the circumstances should have been submitted to the jury in an affirmative form.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 961; Dec. Dig. ⬤⟿230(8).]

7. CARRIERS ⬤⟿215(1) — CARRIAGE OF LIVE STOCK—DELAY IN TRANSPORTATION—LIABILITY.

Where a carrier of live stock, upon arrival of the shipment at a connecting point, repairs the cars, containing part of the shipment, as soon as possible, and delivers the whole shipment to the connecting road as quickly as a person of ordinary prudence, similarly situated, would do under the same circumstances, it is not liable for a delay in transportation, though the cattle were injured by heating by the stoppage.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 923; Dec. Dig. ⬤⟿215(1).]

8. CARRIERS ⬤⟿216 — CARRIAGE OF LIVE STOCK—LIABILITY OF ROAD.

Where a shipment of cattle, suffering from Texas fever, is negligently delayed by the railroad, and the cattle are damaged solely on account of their infection with the disease, the shipper cannot recover for the damages so caused.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 929; Dec. Dig. ⬤⟿216.]

9. CARRIERS ⬤⟿229(2) — CARRIAGE OF LIVE STOCK—DELAY IN TRANSPORTATION—DAMAGES.

Where some cattle shipped by rail were dead when they reached destination, negligent delay of the shipment at an intermediate point being the proximate cause, the measure of the shipper's damages for the dead cattle was their market value at destination on arrival had no delay occurred.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 964; Dec. Dig. ⬤⟿229(2).]

10. CARRIERS ⬤⟿229(2)—CARRIAGE OF LIVE STOCK—DELAY IN TRANSPORTATION—DAMAGES.

Where cattle shipped reached destination afflicted by distemper or catarrhal fever, proximately caused by the negligent delay of the

shipment at an intermediate point, the measure of the shipper's damages was the difference in the market value of the cattle in their diseased condition at destination on arrival and such value in the condition they would have been in had the delay not occurred.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 964; Dec. Dig. ☞229(2).]

11. CARRIERS ☞215(1) — CARRIAGE OF LIVE STOCK—LIABILITY OF RAILROAD.

Where the shipper of cattle by rail, upon part of the shipment's being necessarily delayed by repairs becoming necessary to the cars, refused the road's offer to forward the residue of the shipment immediately, stating that he preferred that the entire shipment go forward at the same time, he could not recover for the delay of the residue of the shipment, so offered to be immediately transported.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 923; Dec. Dig. ☞215(1).]

Conner, C. J., dissenting in part.

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Suit by R. E. Gatewood against the Ft. Worth & Denver City Railway Company and another. From a judgment against the named defendant, it appeals. Judgment reversed, and cause remanded.

Thompson & Barwise and G. W. Wharton, all of Ft. Worth, and Brown & Lockett, of Cleburne, for appellant. Johnson & Harrell and S. C. Padelford, all of Cleburne, for appellee.

DUNKLIN, J. R. E. Gatewood shipped 438 head of cattle from Henrietta to Cleburne; over the Ft. Worth & Denver City Railway from Henrietta to Ft. Worth, and from Ft. Worth to Cleburne over the Gulf, Colorado & Santa Fé Railway. The cattle left Henrietta at 8 o'clock p. m. October 12, 1912, and arrived at Ft. Worth about 3 o'clock a. m. on October 13th. After their arrival in Ft. Worth three of the cars in which the cattle were loaded were inspected and found to be in bad order. Those three cars were cut out of the train, and placed on what is known as the "rip" track for repairs. The entire shipment was held while these repairs were being made, and after the cars were repaired the cattle were turned over to the Gulf, Colorado & Santa Fé Railway Company, and that company carried them to their destination at Cleburne, leaving Ft. Worth at 10:15 a. m. on October 13th, and arriving at Cleburne about 12:15 p. m. of the same day. The owner of the cattle instituted this suit against the two railway companies to recover damages for alleged injuries to them during the shipment. A trial before a jury resulted in a verdict and judgment in favor of the Gulf, Colorado & Santa Fé Railway Company, but against the Ft. Worth & Denver City Railway Company for $4,451.46, from which judgment that company has appealed.

According to allegations in the plaintiff's petition, the appellant company was guilty of negligence in delaying the shipment at Ft. Worth, during which delay the cattle became overheated by being confined in the cars while the weather was warm, and without the cool air which they would have received if the cars had been in motion or had they been unloaded from the cars, and that by reason of becoming so overheated and exhausted, and by reason of their sudden cooling off when they resumed their journey at a high rate of speed, they contracted distemper and catarrhal fever, from which some of them died and on account of which the rest lost weight and were greatly depreciated in value.

The distance from Henrietta to Ft. Worth is 96 miles, from Ft. Worth to Cleburne, 28 miles. The only issue of negligence of appellant raised by the evidence was the delay of the shipment in Ft. Worth. Eason, appellant's yardmaster at Ft. Worth, testified that the defective cars were set on the rip track for repairs at 4:30 in the morning. Tanner, appellant's car repairer, testified that he commenced the repair work on those cars at 4:35 in the morning, and finished it at 7:02 of the same morning. According to the testimony of other witnesses, it was necessary for the train carrying the cattle to go through the interlocker in order to be transferred to the Gulf, Colorado & Santa Fé Railway; that the train was pulled up to the interlocker at 8 o'clock in the morning, but that it could not get through until 9:27 in the morning, at which time the train was delivered to the Gulf, Colorado & Santa Fé Railway Company.

The following question was propounded to plaintiff, R. E. Gatewood:

"What is the time of shipment from Henrietta to Cleburne; the time that they should have been brought through, how many hours? What is the proper and reasonable time for these cattle to have arrived in Cleburne after they had been taken from Henrietta?"

To which the witness answered:

"They should have made the time in eight or nine hours."

He was also asked the following question: "Mr. Gatewood, in your best judgment, what was the difference in the market value of these 438 head of cattle per head in the condition in which they should have been delivered had they not been delayed at Ft. Worth an unreasonable time? What in your best judgment was the difference in the market value of those cattle?" To which the witness answered:

"There was at least $15 a head difference; in fact I do not believe I could have gotten a man to have them at any price."

To each of those questions and the answer thereto, appellant objected because it called for the opinion of the witness upon a mixed question of law and fact, and to give such an opinion would be an invasion of the province of the jury. Those objections were overruled, and those rulings have been assigned as error.

[1] Notwithstanding the fact that the witness testified that he had had 25 or 30 years'

experience in shipping cattle and knew the distances from Henrietta to Ft. Worth, and from Ft. Worth to Cleburne, and the rate of speed at which the train traveled, and that he accompanied the shipment, we are of the opinion that this assignment should be sustained upon the authority of H. & T. C. Ry. Co. v. Roberts, 101 Tex. 418, 108 S. W. 808, and numerous other decisions following that one, among which are G., C. & S. F. Ry. Co. v. Bogy, 178 S. W. 577, I. & G. N. Ry. Co. v. Hamon, 173 S. W. 613.

The following question was propounded by plaintiff's counsel to the witness Arch Ferguson, who had already testified that he had been engaged in the cattle business for a number of years and had inspected plaintiff's cattle at Cleburne:

"What, in your judgment, would be the difference in the market value of the cattle here at Cleburne at the time you saw them in the condition they would have been in had they been brought on without any delay and in the condition they were in; what would have been the difference in the market value of those cattle in Cleburne, at that time, in your best judgment?"

To which the witness answered:

"I would judge $15 or $20 a head; $20 I would think."

[2] The same objection was urged by appellant to that question and answer, as was urged to the testimony of plaintiff, himself, discussed above, and we think the objection should have been sustained. It would be impossible to make such a shipment without some delay, as every one knows, and in answering the question necessarily the witness took into consideration what, in his opinion, was a reasonable time for such a trip, which was an opinion upon a mixed question of law and fact.

[3] For the same reason we are of opinion that the trial court erred in permitting the plaintiff to testify, in effect, that the cattle should not have been held in the cars at Ft. Worth without being unloaded for a longer period of time than one hour, and in admitting the testimony substantially to the same effect, given by Roe Robinson, an experienced shipper, and by Dr. Burns a veterinary surgeon.

Tanner, appellant's car repairer, testified that in order to repair two of the cars which were in bad order, it was necessary to put in draft bolts in both ends of each, working on the inside of the cars; that he did this without unloading the cattle therefrom, and described his method of doing it as follows:

"I got in there and pushed the cattle back and jabbed them with sticks and put a bar across. I would not say I got them back 2½ feet. You can push them back from the outside and put a bar across and then get in there."

According to other testimony the cars were 36 feet in length, and there were 21 or 22 head of three or four year old steers in each car.

In rebuttal of the testimony of Tanner, the court permitted W. G. Powell, an experienced cattle shipper, to testify for plaintiff that the cattle could not be pushed back sufficiently for one to get in the cars to do any work at all; that the cattle could be pushed back with a prod pole, but as soon as the pressure was released they would fall back to their former positions. Appellant objected to the testimony on the ground that it related to an issue upon which expert testimony was not admissible. Perhaps an experienced shipper would know better than the average juror to what extent a car of the dimensions stated would be crowded by the number and size of cattle loaded therein, but upon that question there seems to have been no difference between his testimony and that of the witness Tanner. The witness Powell did not claim to know whether or not the cattle could be held back by a bar, as Tanner testified was done, and under all the circumstances we do not believe his testimony was admissible as against a proper objection, but we doubt the sufficiency of the objection noted above. What we have said relative to that testimony is by way of suggestion, in view of another trial of the case.

[4] The train reached Ft. Worth shortly after 3 o'clock in the morning, and as soon as the defects in the cars were discovered, E. R. Miller, the car inspector, sent a call boy for Tanner, the car repairer, to remedy the defects in two of the cars. According to the testimony of different witnesses, the repairs required in those two cars were what are known as "heavy repairs," done by men especially qualified to do such work. Miller testified that appellant did not have such employés in its yards ready to do such work during the night, but had such men subject to call, and that Tanner came and did the work in response to a call by the call boy, who was dispatched to his home for that purpose. To rebut the imputation of negligence in failing to have employés present in the yards and ready to make such repairs as soon as the necessity therefor was discovered, appellant offered to prove by Miller that it was the custom of all railway companies operating in Ft. Worth to keep no such employés on hand at night, but to depend on calling them whenever their services were needed, just as appellant did in this instance. To that testimony plaintiff objected on the ground that it was immaterial, and that appellant could not excuse its negligence in not having car repairers present at the time to make such repairs, by reason of the custom of other roads to follow the same course. In sustaining that objection we think there was error. The rule is well settled that unless the conduct of a business in a certain manner is negligence per se, then proof of a general custom of others following a like business to pursue the same course is admissible, as tending to show that the method so adopted was not a negligent one. H. & T. C. Ry. v. Alexander, 103 Tex. 594, 132 S. W. 119; Mis-

souri, K. & T. Railway v. Pace (No. 8308) 184 S. W. 1051, by this court.

[5] The written contract under which the shipment was made was pleaded and proven by appellant for the purpose of showing that thereby its liability for damages to the cattle was limited to injuries sustained on its own line. In reply to that proof plaintiff testified that he signed the contract without reading it, and that he was not given an opportunity to read it, and appellant complains of the admission of that testimony. Since the judgment was in favor of the Gulf, Colorado & Santa Fé Railway Company, and no complaint is made of that judgment, the question of damages to the cattle while in transit over that road is now eliminated; and for that reason it is not necessary to discuss the assignment last referred to. And as the judgment is to be reversed it will not be necessary to discuss other assignments relative to the alleged misconduct of the jury while considering their verdict.

Relative to other assignments of error in which complaint is made of the charge given by the court to the jury and of the refusal of charges requested by appellant, we think it sufficient to make the following suggestions for the guidance of the court upon another trial:

We are of the opinion that the evidence in the record is insufficient to show that the defective condition of the three cars upon their arrival in Ft. Worth was the result of any negligence on the part of the defendant, and if there is the same lack of such proof on another trial, then the court should give a peremptory instruction in favor of appellant as to that issue, such as is shown in appellant's requested instruction No. 7. G., C. & S. F. Ry. Co. v. Kizziah, 86 Tex. 81, 23 S. W. 578; T. & P. Ry. Co. v. Endsley, 103 Tex. 434, 129 S. W. 342; H. & T. C. Ry. Co. v. Barrager (Sup.) 14 S. W. 242; G., C. & S. F. Ry. Co. v. Davis, 161 S. W. 932.

[6, 7] Appellant's contention, which was supported by evidence, that after the arrival of the shipment in Ft. Worth it repaired the defective cars and delivered the entire shipment to the Gulf, Colorado & Santa Fé Railway Company as quickly as a person of ordinary prudence similarly situated, would have done under the same or similar circumstances should be submitted to the jury in an affirmative form, and the jury should be told that, if that contention is sustained, then a verdict should be returned in appellant's favor. Progressive Lumber Co. v. M. & E. T. Ry. Co. (Sup.) 155 S. W. 176; E. P. & S. W. Ry. Co. v. Foth, 101 Tex. 133, 100 S. W. 171, 105 S. W. 322; G., H. & S. A. Ry. Co. v. Washington, 94 Tex. 510, 63 S. W. 534; Yellow Pine Lumber Co. v. Noble, 101 Tex. 125, 105 S. W. 318. And that, too, even though the jury should further find from the evidence that the cattle sustained the injuries alleged. I. & G. N. Ry. Co. v. Neff, 87 Tex.

303, 28 S. W. 283; H. & T. C. Ry. Co. v. Burns, 41 Tex. Civ. App. 83, 90 S. W. 688; Cleburne Electric L. & Gas Co. v. McCoy, 128 S. W. 457; Tex. Tract. Co. v. Wiley, 164 S. W. 1028; Wells Fargo Co. v. Benjamin (Sup.) 179 S. W. 513.

[8] The jury should be further instructed, in effect, that if they should find that any of the cattle sustained damages, but that if they were suffering from Texas fever at the time, and that such damages were caused solely by Texas fever, then plaintiff cannot recover for such damages so caused, even though the jury should further find from the evidence that the shipment was negligently delayed in Ft. Worth. We are inclined to the opinion that the charge given by the court on the measure of plaintiff's damages was rather confusing, if not erroneous; and we suggest that the usual form of charge on that issue is clearer and better.

[9] If some of the cattle were dead when they reached Cleburne, and if the negligent delay of the shipment in Ft. Worth was the proximate cause of their deaths, then the measure of plaintiff's damages for the cattle so dying would be what the evidence shows would have been their market value in Cleburne upon their arrival there had not such negligent delay occurred.

[10] If some of the cattle that reached Cleburne alive were afflicted with distemper or catarrhal fever and if such negligent delay of the shipment in Ft. Worth was the proximate cause of such diseased condition of those cattle, then the measure of plaintiff's damages for such injuries to those cattle would be the difference in their market value in that condition in Cleburne upon their arrival and what the evidence shows would have been the market value of the same cattle in Cleburne upon their arrival there in the condition they would have been in, if such negligent delay had not occurred.

[11] According to the testimony of one of appellant's witnesses, which, however, was controverted by plaintiff's testimony, during the delay in Ft. Worth, and when plaintiff complained of the delay appellant, through one of its employés, offered to forward all of the cattle except those contained in the three defective cars without holding them to await the repairs upon those cars, but that plaintiff declined said offer, stating at the time that he preferred that the entire shipment go out of Ft. Worth at the same time. If such was the fact, then plaintiff would not be entitled to recover for such additional delay of the cattle so offered to be immediately transported. No specific assignment of error has been presented upon this appeal to the failure of the court to submit that issue to the jury, but the suggestion of error for such failure has been made under another assignment, and if upon another trial a proper charge upon that issue is requested, the same should be given.

For the reasons noted, the judgment is reversed, and the cause remanded.

CONNER, Chief Justice (dissenting in part). I concur with the foregoing opinion. except that I am unable to agree to the conclusion of the majority that the second question to the plaintiff and his answer thereto, and the question to and answer of the witness Arch Ferguson and others all relating to the question of market value, are within the decision of the Roberts Case, and therefore erroneous. My view of questions and answers of this character has been expressed at some length in dissenting opinions presented by me in the cases of Tex. & Pac. Ry. Co. v. Prunty (No. 8341) 187 S. W. ——, this day decided by this court, and Railway Co. v. McIntyre & Hampton, 152 S. W. 1105. I, therefore, refer to those dissenting opinions for my conclusions in this case on that subject.