KANSAS CITY, M. & O. RY. CO. OF TEXAS et al. v. JAMES et al.  (No. 1082.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 20, 1916.)

1. NEGLIGENCE �köm119(4) — PLEADING AND PROOF—SPECIFIC ACTS.

Where the petition in a negligence action alleges generally that the injury was the result of negligence, and then specifically sets up the acts of negligence relied on, the evidence will be confined to the specific allegations; the general allegations being controlled by the specific acts averred.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 208; Dec. Dig. ⊜⇒119(4).]

2. LIMITATION OF ACTIONS ⊜⇒127(17) — AMENDMENT—NEW CAUSE OF ACTION.

In action for negligence and delay in shipping cattle, an amendment to the petition offered during the trial alleging that the cattle were on the cars for 43 hours and plaintiffs were refused permission to unload, feed, and water them during that time, etc., did not set up a new cause of action, although alleging different and additional grounds of negligence, and was not barred, though two years had elapsed.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 545; Dec. Dig. ⊜⇒ 127(17); Pleading, Cent. Dig. § 688.]

3. CONTINUANCE ⊜⇒30—SURPRISE AT TRIAL—AMENDMENT.

But such an amendment required continuance, upon defendants' request, to afford reasonable time to procure evidence to rebut the new allegations, since the amendment set up entirely new grounds of negligence, notwithstanding plaintiffs, in repelling any inference of contributory negligence arising from their having special charge of the cattle during transportation, had introduced some evidence that they had requested the cattle be unloaded for feed, water, and rest.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 99–112; Dec. Dig. ⊜⇒30.]

4. CARRIERS ⊜⇒228(1)—LIVE STOCK—BURDEN OF PROOF.

In action for negligent carriage of cattle, where defendants pleaded and proved that plaintiffs' contracts gave them special charge of the cattle in transportation, the burden was on plaintiffs to exonerate themselves for any negligence effecting injury to the cattle, since, if plaintiffs were negligent in that respect, defendants could reduce the damages, so that extent as affecting the amount of recovery based on defendants' negligence.

[Ed. Note.—For other cases, see Carriers, Century Dig. §§ 957, 958; Decennial Dig. ⊜⇒ 228(1).]

5. APPEAL AND ERROR ⊜⇒231(3)—PRESERVATION OF OBJECTIONS—FORM OF OBJECTION—EVIDENCE.

In an action for negligent carriage of cattle, error in the admission of evidence for plaintiffs of difference in the value of cattle when loaded and on their arrival was not sufficiently presented for review by the general objection that evidence "of any difference in value" between time of loading and of arrival would be incompetent to prove damage to the shipment.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ⊜⇒231(3); Trial, Cent. Dig. §§ 194–200.]

6. TRIAL ⊜⇒81 — OBJECTION TO EVIDENCE — FORM.

A party objecting to evidence should state his objections clearly and specifically so that they may be understood by the court and obviated by the opposing party if capable of being removed by the production of other evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 193; Dec. Dig. ⊜⇒81.]

7. EVIDENCE ⊜⇒481(3)—CONCLUSION OF WITNESSES.

In action for negligent carriage of cattle, testimony that the difference in value of the cattle was $5 a head on account of their actual appearance on arrival compared with what their appearance would have been if they had arrived after a run in reasonable time was inadmissible as being a conclusion of witness on a mixed question of law and fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2251, 2254; Dec. Dig. ⊜⇒481(3).]

8. EVIDENCE ⊜⇒544 — EXPERTS — QUALIFICATION—CONDITION OF CATTLE.

In action for negligent carriage of cattle, an experienced cattleman may qualify to testify what the condition of cattle would be if confined in cars from 40 to 43 hours without unloading, although such witness has never accompanied a shipment of cattle.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2356; Dec. Dig. ⊜⇒544.]

Appeal from District Court, Dallam County; D. B. Hill, Judge.

Action by A. M. James and another against the Kansas City, Mexico & Orient Railway Company of Texas and another. From a judgment for plaintiffs, defendants appeal. Reversed and remanded.

Thompson & Barwise, of Ft. Worth, H. S. Garrett, of San Angelo, and J. Y. Powell, of Houston, for appellants. Tatum & Tatum, of Dalhart, for appellees.

HENDRICKS, J. The appellees sued the Kansas City, Mexico & Orient Railway Company of Texas and the Ft. Worth & Denver City Railway Company for damages alleged to have arisen on account of a shipment of 850 head of cattle, made on April 21, 1913, from Ft. Stockton, Tex., by way of Chillicothe, to Dalhart, Tex.

The original petition of the plaintiffs, as well as the amended original petition, contain general allegations of negligence addressed to the failure of the defendant railway companies to exercise ordinary care in the transportation of the cattle, and the failure to transport the same with reasonable dispatch. Said petitions, however, contain specific allegations of negligence, set out in different paragraphs, alleging delay, rough handling of the cattle by jerking the cars in which they were shipped, also permitting the same to stand on the cars at a station, or stations, an unreasonable length of time, all of which produced the death of some of the cattle and a damage of $1,251 to the remainder.

[1] It is the settled rule in regard to the construction of pleadings in negligence cases that, where the petition alleges generally that the injury was the result of negligence, and then specifically set up the acts of negligence relied upon, the evidence will be confined to the specific allegations of negligence,

and the general allegations will be controlled by the specific acts averred. Railway Co. v. De Ham, 93 Tex. 74–78, 53 S. W. 375; Railway Co. v. Younger, 10 Tex. Civ. App. 141, 145, 29 S. W. 948; Railway Co. v. Hennessey, 75 Tex. 155, 158, 12 S. W. 608.

During the trial of the case, and after the evidence had nearly closed, the plaintiffs requested, and the trial court granted, permission to file a trial amendment, in which it was alleged:

That the plaintiffs' cattle "were upon the defendants' said cars for more than 43 hours from the time they were loaded at Ft. Stockton, Tex., before they were unloaded for feed, water, and rest, and defendants failed and refused to permit the plaintiffs to unload, feed, water, and rest said cattle for more than 43 hours from the time they were loaded, * * * although demanded and requested by the plaintiffs to do so."

It was also alleged that defendants failed to provide sufficient facilities to plaintiffs for the purpose of feeding, watering, and resting the cattle.

The first amended original petition of the plaintiffs was filed in the cause on the 15th day of January, 1915, and the cause was called for trial on March 13, 1916.

The defendants objected to the filing of the trial amendment, for the reasons that the allegations of negligence contained therein had never before been set up in plaintiffs' pleading, to their surprise, and without affording defendants opportunity to procure testimony to rebut the allegations. The objections were overruled by the trial court, and plaintiffs were permitted to file the amendment.

The defendants then presented to the court a motion, properly sworn to, to withdraw their announcement of ready in the cause, and continue the same for the term, or postpone it to a subsequent date, for the purpose of procuring testimony and evidence to rebut the plaintiffs' trial amendment. In said motion it was asserted that, if allowed a reasonable time in which to procure the evidence, the defendants expected to prove that the cattle did not remain on board the cars for the length of time alleged by plaintiffs, nor that the plaintiffs made any request of defendants, or either of them, to have the cattle unloaded, fed, watered, and rested. It was stated in the motion:

"That defendants had and were possessed of ample facilities to unload, feed, water, and rest said cattle at reasonable intervals, and would have furnished same to plaintiffs if requested, or informed of conditions rendering same necessary or advisable."

The defendants in their answers had pleaded the usual cattle shipping contracts, by the terms of which the plaintiffs had agreed to feed, water, and care for the cattle, unload and reload the same during the transportation.

After the filing of the trial amendment the defendants also pleaded a special exception, interposing the two-year statute of limita-

tion arising upon the record, which was likewise overruled by the trial court.

[2] We think the trial amendment, though alleging additional and different grounds of negligence, contributing, in part, to the cause of action, such negligence shown to be a part of the same transaction, and effecting the same injury alleged in the first amended petition, did not set up a new cause of action. Railway Co. v. Mitten, 13 Tex. Civ. App. 653, 36 S. W. 282, writ of error denied, Cotton Co. v. Stewart, 17 Tex. Civ. App. 59, 42 S. W. 241, writ of error denied by Supreme Court, 93 Tex. 695, 42 S. W. 241; Cotter v. Parks, 80 Tex. 539, 16 S. W. 307; Massey v. Blake, 3 Tex. Civ. App. 57, 21 S. W. 782; T. C. Ry. Co. v. Frazier, 34 S. W. 665; Landa v. O'Bert, 78 Tex. 46, 14 S. W. 297; Texas & Pacific Railway Co. v. Buckalew, 34 S. W. 165.

[3] We think though the trial court should have sustained the defendants' motion and either continued the cause for the term or postponed it for a future date, affording reasonable time to procure evidence to rebut the new allegations of negligence.

It is clear, analyzing the specific acts of negligence charged in the amended petition, to which the proof would had to have been confined in sustaining the cause of action asserted therein, that the allegations of negligence set up on the trial amendment were entirely new grounds of negligence contributing to the injury and the recovery.

It is true that to the time of the trial amendment, there had been testimony on the question of the cattle having been injured on account of the long detention upon the cars and some testimony by one of the plaintiffs that at certain points during the transportation a request was made of the defendants that the cattle be unloaded for feed, water, and rest; and the record does not disclose any objection to this testimony, except that after the case had closed upon the evidence a special charge was requested and refused by the trial court that the character of testimony mentioned be excluded from the jury. We mention the fact of the deliverance of this character of testimony before the time of the filing of the trial amendment for the reason that it may be suggested and argued that such testimony was in the record, and the defendants could not have been surprised on that account. Such testimony, however, can be appropriately accounted for without any objection upon the part of the defendants on account of this condition. As stated, defendants had pleaded that the plaintiffs had assumed, as caretakers, the charge of the cattle during transportation, on account of special contracts pleaded by them. Such testimony was pertinent on the controverted issue between plaintiffs and defendants, whether the former were guilty of negligence in failing to comply with the contract to care for the cattle in course of transportation.

[4] The plaintiffs not having pleaded (to the time of the trial amendment) as grounds of negligence that the cattle had been on the cars an unreasonable length of time without feed, water, and rest, nor that defendants had failed to furnish facilities, the latter had the right to regard that such testimony in the record up to the time of the filing of the trial amendment was relevant only to the contributory negligence of the plaintiff, and not as affecting any right of recovery by the plaintiffs. When defendants pleaded that plaintiffs, under their contracts, had special charge of the cattle in transportation, the burden, after the introduction in evidence of said contracts, was upon the plaintiffs to exonerate themselves for any negligence affecting the injury to the cattle. Texas & Pacific Railway Co. v. Arnold, 16 Tex. Civ. App. 76, 77, 40 S. W. 829; Railway Co. v. Vaughan, 41 S. W. 415; opinion on motion for rehearing in the case of Ft. Worth & Denver City Railway Co. v. Allen, 189 S. W. 765 (with numerous authorities cited therein), decided by this court November 29, 1916. If they were negligent in that respect, necessarily defendants had the right to reduce the damages to that extent as affecting the amount of recovery based on the grounds of negligence alleged in the amended original petition. Such an issue, as pertinent to the defense of the carriers when first asserted in plaintiffs' trial amendment upon grounds of negligence affecting their right of recovery, is entirely different when addressed to the right of the defendants to be heard thereupon.

It may be said that, because there was evidence introduced by plaintiffs and defendants as a controverted question affecting defendants' defense, this court should consider (though the issue was reconverted in plaintiffs' petition as a ground of recovery) that all the testimony had been developed on that subject.

The case of Railway Co. v. Groner, 100 Tex. 414, 100 S. W. 137, presents one where a new cause of action was pleaded by amendment. An application was made by the defendant for a continuance to meet the new cause asserted. The defendant was forced to trial, and, as affecting the right of that litigant for opportunity to meet the new issues, Justice Williams of the Supreme Court said:

"Nor is the objection to the ruling of the court met by the fact that some evidence was produced by the defendant of the same character as that for which the continuance was sought. This consideration has weight where time and opportunity to procure evidence have been allowed and further delay is sought, but does not properly affect the question here. The defendant was entitled to a reasonable opportunity to bring all the evidence upon the issue which it could produce and thought important to its defense, and could not properly be denied this right so long as it was not in default."

The defendants, by their attorney, swore that they expected to meet the new issues presented in plaintiffs' petition as grounds of recovery, if permitted opportunity to do so. The "newness" of the issue (though a new cause of action is not made) presents the application of the principle of the right for time to meet it equally as significantly as if a new cause had been presented.

The trial court submitted to the jury the issues of the alleged liability of the defendants for failure to unload, feed, water, and rest the cattle en route, and the failure to furnish plaintiffs reasonable facilities, on demand therefor, at reasonable intervals. It is evident, considering the statement of facts, that such issues were matters of serious consideration by the jury, which could have contributed considerably to their verdict. We think the trial court would have been on the "safe side" in continuing or postponing the cause.

[5] The first assignment of error declares that:

"The court, in permitting one of the plaintiffs, W. P. James, while testifying as a witness in behalf of plaintiffs, to testify, over objections of defendants, that the difference in the value of the cattle when loaded on the train at Ft. Stockton and their value when they arrived at Chillicothe was about $2 a head; defendants' objections being that said testimony was incompetent to prove the damage to the shipment from the time they left Ft. Stockton until they arrived at Chillicothe."

The proposition under this assignment is:

"That the measure of damages to a shipment of live stock is the difference, if any, in the market values of said stock, if any, at the time and in the condition in which they did arrive at destination and at the time and in the condition in which they should have arrived if handled and transported with ordinary care and reasonable dispatch."

The bill shows that the objection to the testimony was:

"That evidence of any difference in value of the cattle from the time they were loaded and penned at Ft. Stockton and the time they arrived in Chillicothe would be incompetent to prove the damage to the shipment of cattle."

[6] A party objecting to evidence should state his objections clearly and specifically so that they may be understood by the court, and obviated by the opposing party if they be capable of being removed by the production of other evidence. Bohanan v. Hans, 26 Tex. 445; Croft v. Rains, 10 Tex. 520; Cobb v. Norwood, 11 Tex. 556.

Plaintiffs were evidently attempting, by the testimony, as exhibited in the bill of exceptions, to properly present an apportionment of damages with reference to the several liability of the connecting carriers. The objection that evidence of any difference in value of the cattle from the time they were loaded and penned at Ft. Stockton and the time they arrived in Chillicothe was incompetent would not reach the question. Plaintiff had a right, in some manner, to present the damages arising from the injury to the cattle on account of the negligence of the Orient, and such a general objection, to the effect that "any evidence" of any difference in value at Chillicothe, etc., was too general.

There could be evidence on the question tending to prove the difference which would be proper. We also seriously doubt that an objection on the ground of incompetency would permit the court to exclude the evidence.

[7] Appellants objected to the following answers of one of the plaintiffs James, on the ground that they were a conclusion of the witness and were answers on a mixed question of law and fact:

"The real appearance of the cattle and what they should have arrived in if they had got in on a good day without lying in that mud at Amarillo, and on those cars, the appearance was $5 difference in them. They were that much off in appearance."

The meaning of this testimony is a little difficult. If it is intended to convey the idea of the difference in value of the cattle at $5 per head on account of their actual appearance compared to their appearance if they had arrived as the result of a good run, we are clear that the testimony was subject to the objections, and was improper. Reading the whole of this witness' testimony, we are inclined to think that he was intending to convey such a meaning, or one similar thereto, though he used the expression as a part of his testimony, "what they should have arrived in if they had got in on a good day," meaning a good run or a run in good time, or at least a reasonable time. It will be recalled that the Supreme Court, in the case of Houston & Texas Central Railway Co. v. Roberts, 101 Tex. 418, 108 S. W. 809, held that a witness' testimony, in effect, that "runs" previously made within a certain time "would be a reasonable time to make the trip," constituted an answer involving a mixed question of law and fact; that the witness must first determine for himself what would constitute ordinary care, and then have deduced from a consideration of all the elements that would enter into his opinions on the question of reasonable time, a conclusion as to what that time should be. If a witness is unable to state that certain runs would constitute a reasonable time within which to make a trip, then this witness would certainly be unable to state the difference in the value of the cattle on account of a difference in appearance; one element of his conclusion being based upon a good run or a reasonable run. He would be unable to state in the first instance what a reasonable or a good run or what reasonable time would have been. The following authorities hold the character of testimony discussed as improper: T. & P. Ry. Co. v. Jones, 58 Tex. Civ. App. 132, 124 S. W. 194; K. C., M. & O. Ry. Co. v. Bigham, 138 S. W. 432; K. C., M. & O. Ry. Co. v. Beckham, 152 S. W. 229; T. & P. Ry. Co. v. McIntyre, 152 S. W. 1103; T. & P. Ry. Co. v. Crowder, 157 S. W. 281; T. & P. Ry. Co. v. Tomlinson, 157 S. W. 278; H. & T. C. Ry. Co. v. Hawkins, 167 S. W. 190; I. & G. N. Ry. Co. v. Hamon, 173 S. W. 613; P. & N. T. Ry. Co. v. Holmes, 177 S. W. 505; F. W. & D. C. Ry. Co. v. Gatewood, 185 S. W. 932; K. C., M. & O. Ry. Co. v. Corn, 186 S. W. 807.

[8] There were several assignments of error in the brief challenging the testimony of a number of witnesses who stated that cattle would become drawn, feverish, and weak if confined in cars from 40 to 43 hours without unloading, feeding, watering, and resting the same; most of the witnesses also answering that it would take several days to recuperate or recover from the weakened condition. There can be no doubt but what nearly all of the witnesses qualified themselves to speak on the subject, on account of their experience as cattlemen and as shippers. The witness Price, it is true, stated that he had never accompanied a shipment of cattle. However, considering his experience, we think it was a question for the jury as to the weight of his testimony. There are witnesses who were not cattlemen, strictly speaking, testifying along the same line, the objections to which we will not discuss, for the reason that it is practically an indisputable fact in this record that cattle of this character, confined for the length of time as shown in this record, without sustenance and rest, were injured.

The eleventh assignment challenges the verdict of the jury and judgment of the court on the ground that there was not sufficient evidence to show any difference in the market value of the cattle that reached Dalhart alive at the time and in the condition they did arrive and the market value of such cattle at the time and in the condition they should have arrived at destination. In view of another trial the discussion of this assignment would probably be academic.

For the reasons indicated, the cause is reversed and remanded.