FORT WORTH & D. C. RY. CO. et al. v. HARLE. (No. 9786.) *

(Court of Civil Appeals of Texas. Ft. Worth. March 4, 1922. Rehearing Denied April 15, 1922.)

1. **Appeal and error** ⊗∽664(4)—**Error in admission of evidence not in statement of facts agreed to by counsel not considered on appeal.**

Where a statement of fact, agreed to by counsel and approved by the trial judge, did not contain evidence whose admission was claimed to be error in a bill of exceptions, admission of the evidence will not be considered on appeal, since such a statement of facts controls.

2. **Carriers** ⊗∽230(1)—**Damage to stock held sufficient to go to the jury.**

Evidence of damage to shipments of stock *held* sufficient to go to the jury.

3. **Carriers** ⊗∽228(5)—**Evidence held to sustain verdict for damage to stock.**

Evidence *held* sufficient to sustain a verdict for damage to shipments of stock.

---

**4. Trial ⚙︎191(6)—Refusal of charge, assuming that cattle were unfit for shipment, held proper.**

In an action by a shipper for damages to cattle in shipment, refusal of an instruction that if dipping the cattle before loading them was the proximate cause of their being unfit for shipment, or caused them to be in a weakened condition that made them more susceptible to injury than if they had not been dipped, to find for defendants, was proper, since it assumed that the cattle were unfit for shipment.

**5. Trial ⚙︎191(11)—Instruction assuming that market value had been established held error.**

In an action by a shipper for damage to horses in shipment, an instruction, assuming the establishment of market value of the horses at their destination if they had arrived alive and in good condition, was error.

**6. Evidence ⚙︎472(2) — Admission of testimony of shipper as to amount of depreciation in value of horses shipped held error.**

In an action by a shipper against a railroad for damage to horses in shipment, admission of testimony by the shipper that the horses were damaged to the extent of an average of $5 a head was error, since it was a mixed conclusion of fact and law on the part of the witness, and invaded the province of the jury.

Appeal from District Court, Montague County; C. R. Pearman, Judge.

Action by Mrs. R. H. Harle against the Fort Worth & Denver City Railway Company and another. From judgment for plaintiff, defendants appeal. Reversed and remanded.

Thompson, Barwise, Wharton & Hiner, of Fort Worth, Donald & Donald, of Bowie, and F. B. Walker, of Fort Worth, for appellants.

J, A. Templeton, of Fort Worth, for appellee.

BUCK, J. On May 30, 1917, R. H. Harle shipped two carloads of horses and nine carloads of cattle over the Wichita Valley Railroad from Seymour, Tex., and eight carloads of cattle from Fort Worth over the Fort Worth & Denver City Railroad to Malta, Mont., nearly 1,900 miles. These two shipments were placed in one train at Wichita Falls, and made the rest of the journey together. The cattle reached Malta on June 10 or 11, 1917. The horses were delayed at Billings, Mont., for some time, for inspection it seems, and reached Malta on June 14th. Plaintiff filed suit against the two railroad companies mentioned on December 7, 1917, alleging unnecessary delay, rough handling, etc., resulting in the loss of 4 mares, alleged to be of the reasonable market value of $150 each; and 6 colts, of the value of $40 each; and 11 head of cattle, valued at $60 each. He further alleged depreciation in the market value of the 648 head of cattle which

reached Malta, at $1 a head, and a depreciation in the value of the 60 horses and colts at $5 a head. He also asked $100 damages as excess feed bill. Mrs. Sallie G. Harle, widow of R. H. Harle, was made plaintiff on January 11, 1921. Trial was had, and the cause was submitted to the jury upon a general charge, and the jury returned a verdict for plaintiff for damages in the sum of $1,600. From the judgment entered thereon the defendants have appealed.

[1] In the fifth and fourteenth assignments, error is charged to the admission of certain testimony of G. W. Rankin. The statement of facts, agreed to by the counsel and approved by the trial judge, does not appear to contain the evidence to the admission of which these assignments are directed. In case of a variance between the bill of exceptions and the statement of facts, where the latter is agreed to by the counsel or is prepared by the judge, the statement of facts control. Wiseman v. Baylor, 69 Tex. 63, 6 S. W. 743; Jamison v. Dooley, 98 Tex. 206, 82 S. W. 780; Mo., K. & T. Ry. v. Washburn (Tex. Civ. App.) 184 S. W. 580, writ refused; Keppler v. Tex. Lumber Mfg. Co. (Tex. Civ. App.) 184 S. W. 353, writ refused; M., K. & T. Ry. Co. v. Storey (Tex. Civ. App.) 195 S. W. 350. Hence the assignments are overruled.

[2] In the first assignment, fundamental error is claimed by reason of the refusal of the trial court to peremptorily instruct a verdict for the defendants. It is urged that there is no competent or legal evidence in the case showing what damage, if any, appellee has sustained. John Hardin testified:

"My name is John Hardin, age 56 years, residence, Malta, Mont., occupation, dealer in live stock. I have been buying and selling live stock continuously at this point and vicinity for 4 years last past, and have dealt in cattle all my life practically. I have made many trips with cattle to the South St. Paul and Chicago markets during the last 15 years; none at other points. I was on the market buying and selling cattle, and knew what mixed cattle were worth in the vicinity of Malta, Mont., and in the surrounding country in the spring of 1917. The value was from $50 to $65 in bunches—have paid that for them. The local market value at Malta was and always is more or less governed by the market value at South St. Paul, Chicago, and Omaha and other markets. The market price of cattle at the main markets either lowers or raises values locally. The general trend for the last 2 years has been upward. The matter of value of Montana range stock is always what the stock will bring. In May, 1917, the general run of range stock hereabouts brought $50 to $55 per head here; the same run of stock brought $55 to $65 per head the following fall. I do not know what Texas cattle were worth at Malta in the spring of 1917, but I do know that Texas cattle bring more on this market than our own of the same condition and grade."

⚙︎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

We think this evidence is sufficient to preclude the trial court from giving a peremptory instruction. In addition R. H. Harle, the shipper, testified that he knew the market value of his cattle at the time they were delivered at Malta, and what it would have been had they reached there in an uninjured condition, that is, with no more injuries than are usual and customary in such shipments, with handling in the usual and customary manner, that their value, if so transported, would have been $60 per head, and that in his opinion the cattle were depreciated $1.50 per head. We think this testimony of Harle was admissible as tending to establish the market value of cattle at Malta, and that it was tantamount to a statement by him that the reasonable market value of the cattle, had they been transported under the usual and customary conditions and had not been subjected to delays or rough handling while in transit, would have been worth $60 a head; that the cattle in the condition they reached Malta were worth only $58.50 a head. Fort Worth & Denver City Ry. Co. v. Gatewood (Tex. Civ. App.) 185 S. W. 932, Judge Conner's dissent; same case by Supreme Court, 232 S. W. 493.

[3] This assignment is overruled. Likewise the second assignment, which attacks the verdict of the jury and the judgment of the court below for lack of evidence to support them.

[4] The third assignment is directed to the action of the court in refusing appellant's special charge, to wit:

"Contributory negligence is such negligence on the part of the person, or persons, injured or damaged as, concurring with the negligence of the persons causing the injury, proximately helps or contributes to cause the injury or damage complained of; and, bearing the foregoing definition in mind, if you believe from the evidence that the dipping of said cattle by plaintiff at Seymour, Tex., just prior to the loading of the same, caused or was the proximate cause of them being unfit for shipment which they underwent, or if the same caused the same to be in a weakened condition that made them more acceptable [susceptible] to become weakened and not capable of withstanding the journey or trip before them as well as if they had not been dipped, and that the said dipping contributed proximately to the injuries or damages complained of by the plaintiff, then you will find for the defendants."

We think this charge is upon the weight of the evidence, in that it assumes that the cattle shipped from Seymour were unfit for shipment. The court gave a charge upon the usual or inherent vice or weakness of the stock, and no objection is assigned here to the charge as given. We conclude that no reversible error is shown by the refusal of the special charge above quoted.

[5] Paragraph 11 of the court's main charge to the jury; is, in part, as follows:

"If under the foregoing instructions you find for the plaintiff, then you are instructed to assess the damages as follows: First, the market value at Malta, Mont., at the time the stock should have arrived there of such of the cattle and horses as died either while in transit or soon after reaching Malta as the proximate result of the negligence of any of the carriers, if there was such negligence; second, the difference, if any, between the market value at such time and place of such of said live stock as reached Malta alive and did not die soon thereafter, in their then condition, and what their market value would have been at said time and place if they had been transported and delivered there with ordinary care and dispatch by the carriers."

The ground of attack on this charge is that it assumes that the cattle and horses in question had a market value at Malta, and the evidence in the case being in dispute and in conflict as to whether there was a market value for the cattle and horses at Malta, the court should not have assumed that there was a market value as a matter of law. Hardin testified that he did not know enough about the horses in this shipment to testify as to their reasonable market value, and did not know whether the kind and quality of such horses could have been sold in Malta or in that vicinity in the spring of 1917. The only other testimony as to the reasonable market value of the horses was that of R. H. Harle, plaintiff. Even were there no objection to his qualification as an expert witness upon the question of value (and this objection is very strenuous on the part of appellants), we think that the court should not have assumed that a market value of the horses had been established. Harle was an interested witness, and the jury were authorized under the law to disregard any part of his testimony, even though such testimony was reasonable and uncontradicted. Smith v. A., T. & S. F. Ry. Co. (Tex. Com. App.) 232 S. W. 290; Railway Co. v. Runnels, 92 Tex. 307, 47 S. W. 971; West Lumber Co. v. Goodrich (Tex. Com. App.) 223 S. W. 183, 192; Wichita Falls Traction Co. v. Berry (Tex. Civ. App.) 187 S. W. 415, 421; G., H. & S. A. Ry. Co. v. Murray (Tex. Civ. App.) 99 S. W. 144. We believe this assignment must be sustained, and the judgment reversed.

[6] In the sixteenth assignment complaint is made of the admission by the trial court of the following question submitted to R. H. Harle and the answer thereto:

"To what extent in your judgment were these horses depreciated, if they were depreciated, by reason of the handling which they received in transit?"

Answer: "An average of $5 per head."

The admission of practically the same question and the answer thereto is held error in K. C. & M. O. Ry. Co. v. James (Tex. Civ. App.) 190 S. W. 1136, 1139, and Hines v. Edwards (Tex. Civ. App.) 228 S. W. 1117. In

these two cases the courts relied on the cases of H. & T. C. Ry. Co. v. Roberts, 101 Tex. 418, 108 S. W. 808, and Ft. W. & D. C. Ry. Co. v. Gatewood (Tex. Civ. App.) 185 S. W. 932, and other authorities. It is urged by appellants in the instant case that this testimony is a conclusion on the part of the witness on a mixed question of law and fact, and invades the province of the jury. We are inclined to the belief that the assignment should be sustained upon the authorities cited, though in T. & P. Ry. Co. v. Prunty (Tex. Sup.) 230 S. W. 396, on certified question from this court, the Supreme Court, in an opinion by Chief Justice Phillips, held that a witness was properly permitted to answer the question as to "the reasonable market value of the animals at destination if they had been handled with ordinary care and delivered in good condition," and "the difference, if any, between the reasonable market value of the animals at destination in the condition in which they did arrive and that in which they would have arrived if handled with ordinary care." While the Supreme Court in the last-cited decision stated that such decision was not contrary to the decision in the Roberts Case, yet at least some of us believe that it is at least a construction of the decision in the Roberts Case contrary to the views of the courts heretofore expressed as to the meaning of the decision in the Roberts Case. The majority are of the opinion that the Prunty Case, supra, sustains the admission of the testimony complained of in this assignment. Gatewood v. Fort Worth & D. C. Ry. (Tex. Sup.) 232 S. W. 493.

Other assignments are directed to the admission of certain testimony of R. H. Harle and G. W. Rankin. We believe that there is no reversible error shown in these assignments, especially in view of the Supreme Court's decision in the Prunty Case, supra.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded.

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes