## WICHITA VALLEY RY. CO. et al. v. BROWN. (No. 2510.)

(Court of Civil Appeals of Texas. Amarillo. June 10, 1925. Rehearing Denied July 1, 1925.)

1. **Evidence** ⬦471(35)—**Witnesses' testimony as to depreciation of cattle per head not inadmissible as a conclusion.**

Testimony that live stock depreciated specified amounts per head from manner in which handled in shipment was not subject to objection as being a conclusion of the witness, or relating to mixed question of law and fact.

2. **Carriers** ⬦228(5)—**Findings of jury held supported by evidence as to usual and customary time of handling cattle shipped.**

In an action for damages sustained in shipment of cattle, finding of the. jury *held* supported by evidence of the. usual and customary time in handling such shipments.

3. **Trial** ⬦215—**Instruction properly refused as general instruction, where case submitted on special issue.**

In an action for damages sustained by shipment of cattle, where case was submitted on special issues, a requested instruction *held* properly refused as a general instruction, and fact that special issues were tacked to end of such charge did not alter case.

4. **Evidence** ⬦317(9)—**Statements made by caretaker of cattle to conductor of train while en route held inadmissible as hearsay.**

In an action for damages sustained in shipment of cattle, alleged statements made by caretaker of cattle to conductor of train while en route, relative to run being an exceptionally favorable one, was inadmissible, being purely hearsay, and not binding on plaintiff.

5. **Damages** ⬦69—**Judgment including interest therein on amount of recovery to date of judgment erroneous.**

In action for damages sustained in shipment of cattle, submitted on special issues, it was error to render a judgment including interest on the damages found to the date of the judgment; interest not being recoverable as such until after the judgment.

Appeal from District Court, Clay County; Paul Donald, Judge.

Action by C. L. Brown against the Wichita Valley Railway Company and others. From a judgment for plaintiff, defendants appeal. Modified and affirmed.

Thompson, Barwise & Wharton, of Fort Worth, and Taylor, Muse & Taylor and J. L. Lackey, all of Wichita Falls, for appellants.

J. A. Templeton, of Fort Worth, for appellee.

RANDOLPH, J. This suit was filed by C. L. Brown against the Wichita Valley Railway Company, and the Ft. Worth & Denver City Railway Company, to recover damages to a shipment of cattle. A trial was had before a jury, and upon issues submitted to and answers returned by the jury the trial court rendered judgment in favor of plaintiff and against defendants, from which judgment appeal was taken to this court.

[1] The appellants' first proposition assigns error in permitting certain witnesses, among them the plaintiff, to testify that in their judgment the live stock, in so far as it affected all but the calves, had depreciated to the extent of $10 per head as to some of them, and, on an average, that all of them had depreciated $2 per head, for the reasons that such testimony was a conclusion of the witnesses, and that such question was a mixed. one 'of law and fact, and they cite Fort Worth & D. C. R.· Co. v. Gatewood (Tex. Civ. App.) 185 S. W. 932; Harle v. Fort Worth & D. C. R. Co. (Tex. Civ. App.) 240 S. W. 1004; Hines v. Edwards (Tex. Civ. App.) 228 S. W. 1117; H. & T. C. R. Co. v. Roberts, 101 Tex. 418, 108 S. W. 808; K. C., M. & O. R. Co. v. James (Tex. Civ. App.) 190 S. W. 1137.

The plaintiff, in answer to the question, "To what extent, in your judgment, were these cattle which were not injured depreciated per head, if they were depreciated by reason of the handling which they received in transit?" was permitted to testify, over seasonable objection made by the defendants, "that it would be hard to say, but at least an average of $10 per head." It does not appear that there was any objection to the testimony of the witness, on the ground that he was not shown to have been qualified to testify, and upon the grounds assigned we hold that the testimony was admissible. Texas & P. R. Co. v. Prunty, 111 Tex. 162, 230 S. W. 396; Id. (Tex. Civ. App.) 233 S. W. 625–630; Fort Worth & D. C. R. Co. v. Harle (Tex. Civ. App.) 240 S. W. 1004–1006, 1007 (writ denied).

This holding also applies to appellants' proposition No. 2.

[2] Proposition No. 3 raises the ·question that the court erred in rendering judgment in favor of appellee on the findings of the jury in this case, for the reason that the findings of the jury on the instruction submitted to them by the court are contrary to the law and the evidence, in that there is no legal or competent evidence showing what is the usual and customary time of handling a shipment of live stock between Holliday, Tex., and Sylvania, Tex., and, this being one of the essential elements of liability, that the usual and customary time be shown, and there being no such evidence in this case, the trial court erred in so rendering such judgment.

Appellee replies to this, and says that the evidence amply supports the verdict and judgment thereon, but that, even if the evi-

dence had failed to show what was the usual and customary time for the transportation, of the cattle from point of origin to point of destination, the negligent delays and rough usage of the cattle, shown by the evidence and found by the jury, were sufficient to sustain the judgment rendered, without proof as to what was the usual and customary time required for the transportation of the cattle. In other words, appellee, as we understand his counter proposition, insists that, if there was failure of the proof on the question of the customary and usual time for delivery, yet the evidence upon the other elements of damage will sustain the amount of the jury's verdict, and that this question would thereby practically be eliminated, or rendered immaterial. However, it seems to us that the statement in appellants' brief is a little bit broad when they say:

"There was no proof in this case at all of what was the usual, reasonable, and ordinary time necessary for a shipment of cattle from Holliday, Tex., to Sylvania, Tex."

The plaintiff testified:

"The usual and customary time for a shipment of cattle, say 15 cars, to reach Fort Worth, when there is no unusual delay in transit, is about 12 hours."

J. B. Brewer testified that he knew the usual and customary time for the delivery of such shipments from Holliday to Fort Worth over the lines these cattle of plaintiff moved, when they are subjected to no unusual delays in shipment, and that such time was about 6 hours. Metcalf testified that it was 6 or 7 hours. Erickson says that the usual and customary time was 11 to 13 hours. We overrule this proposition.

[3] Appellants' proposition No. 4 alleges error in the refusal to give to the jury their special instruction No. 4, which special instruction is in words as follows:

"Gentlemen of the Jury: In this case you are instructed that, when cattle are delivered to a defendant railway company for shipment, it is the duty of such railway company to have on hand means with which said cattle may be shipped, to ship the same, and in the transportation of said cattle to transport the same within a reasonable time after such shipment is accepted; that it is further the duty of the defendant to exercise that degree of care which a reasonably prudent person would exercise under the same or similar circumstances, and to transport said cattle without any unusual or unreasonable delay or rough handling; and if you find and believe from the evidence that any of said cattle got down in said car by reason of having become chilled, and that, having gotten down, the same subsequently resulted in death or injury to said cattle, and you further find that the defendant company was not negligent in permitting said cattle to become chilled and to get down in said cars, and if you find that they were so chilled and did get down in said cars, and that the railway company was not at fault in permitting said cattle to get chilled,

and due to said chilling they got down in said cars and were killed, bruised, or injured, then you are instructed that the defendant railway company would not be responsible for such death or injury; and now, bearing in mind the foregoing instructions, you will answer the following questions: .

"Special Issue No. 1: Do you find from a preponderance of the testimony that any of said cattle were chilled, and got down in said cars by reason of being chilled, before they left Holliday? Answer 'Yes' or 'No.' Answer: ————.

"Special Issue No. 2: If you have answered the above issue in the affirmative, that is, 'Yes,' then how many cattle do you find were chilled, and got down in said car by reason of having been chilled, if you have answered that any were chilled and down? Answer as you find the facts to be. Answer: ————.

"Special Issue No. 3: Find whether or not the defendant company was negligent in permitting said cattle to become chilled and get down in said cars, if you have found that they did get chilled and down. Answer 'Yes' or 'No.' Answer: ————."

Where a case is submitted on special issues, and a general instruction is tendered the trial court for submission to the jury, it is not error for the trial court to refuse to submit same. As this special instruction violates this rule, no error was committed in its rejection. The fact that issues were tacked to such general instruction does not avoid the rule. T. & N. O. R. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; Fort Worth & D, C. R. Co. v. Morrow (Tex. Civ. App.) 255 S. W. 674, 675 (writ denied).

[4] Appellants also complain of the refusal of the trial court to permit them to interrogate the plaintiff as to alleged statements charged to have been made by the caretaker of the cattle, while en route to Fort Worth, to the conductor of the train, that the run was an exceptional run, and that, if all the shippers received runs like that, there never would be any complaints. What the caretaker said to the conductor should not have been admitted to bind the plaintiff, he not being shown to have been present, and the trial court did not err in excluding said testimony, it being purely hearsay.

[5] The plaintiff's petition sought damages in the sum of $1,776, with 6 per cent. interest thereon from October 23, 1922. In closing his petition, plaintiff specifically prays for "his said damages, with interest thereon, and for all costs of suit, and for relief, both general and special, and so will ever pray." The trial court rendered judgment for the sum of $654, which that court finds the plaintiff is entitled to recover under the evidence and from the findings of the jury, together with a further sum of $69.07, same being 6 per cent. interest on the amount so found by the jury from October 23, 1922, to the date of the judgment, aggregating $723.07. Appellants attack this judgment as to interest, because there was no reference authorizing the

submission as to said interest to the jury, and that no issue was submitted to the jury trying said cause upon the question of interest, and for the further reason that no interest clause was included in the shipping contract between the parties, and that said judgment for interest is without due process of law. While there is a conflict upon the proposition that interest by that name is not recoverable until after judgment, the recent decisions of the Supreme Court are to the effect:

"In cases of this character interest may be allowed by way of indemnification, as a part of the damages, but is never allowed eo nomine; and therefore, in order to recover interest, the damages claimed in the pleadings must be laid in a sufficient amount to cover the loss at the time of the accrual of the cause of action, and the interest thereon from that date to the time of the trial. * * * The recovery was necessarily limited to that amount." S. A. & A. P. R. Co. v. Addison, 96 Tex. 61–64, 70 S. W. 200, 201.

In the case of Texas Electric R. Co. v. Greenhill, 112 Tex. 419, 247 S. W. 840, the writer, answering a certified question from the Court of Civil Appeals for the Fifth District, held as follows:

"The citation in this cause, which it is agreed presents the pleadings in the case in justice court, only asks for recovery of the sum of $95. In this named amount every element of damages sustained by plaintiff is presumed to be stated, including interest as damages. Under the circumstances in this case, he was not entitled to recover interest eo nomine until after judgment, but was confined to such sum claimed by him. He is presumed to have laid this amount as his full compensation. * * * It is true the plaintiff's prayer, as set out in the citation, asks for interest. However, as he was not entitled to interest by that name prior to judgment, such prayer for interest is clearly referable only to his right to recover same after judgment, and upon the judgment. Pecos & N. T. R. Co. v. Rayzor, 106 Tex. 548 [172 S. W. 1103]."

In this last-named case the plaintiff had sued for $95, with a general prayer for interest. He recovered $75, and the trial court gave judgment for that amount, and also for interest at 6 per cent. from the date of shipment to the date of filing of suit. Notwithstanding the plaintiff had failed to measure up by his recovery to the claim made by him, the trial court had no authority to add to the finding of the jury interest, which was rendered by that name. See, also, Southern Gas & Gasoline Engine Co. v. Adams & Peters (Tex. Com. App.) 227 S. W 945, and Morriss v. Hesse (Tex. Com. App.) 231 S. W. 317, 318.

The judgment of the trial court, granting a recovery of interest, is therefore reversed, and here rendered for the defendant, and the judgment for the sum of $654 damages, with interest thereon from June 26, 1924, the date of the judgment as reformed and rendered, is affirmed.