HOUSTON & TEXAS CENTRAL RAILROAD COMPANY V. ELIZA E.
ALEXANDER ET AL.

### No. 2097.   Decided November 30, 1910.

**1.—Master and Servant—Negligence.**

Where the condition of an article used in the master's business was the usual and normal one resulting from the use to which it was put, as that the top of a tool box in a certain position on an oil burning engine should become covered with oil and dust, and neither master nor servant were accustomed to or expected the use of any care to keep it otherwise, such condition, though injury to an employe in its use resulted therefrom, afforded no evidence of negligence on the part of the master.   (P. 597.)

**2.—Same—Case Stated.**

An employee of a railway, whose duty it was to put fuel oil into the oil tanks of engines at a station, ascended for that purpose to the top of the oil tank on the tender by stepping on the sloping lid of a tool box fastened to the tender behind the tank.   Descending after filling the tank, in stepping on the lid of the box, which was covered with oil, his foot slipped and he fell to the ground, receiving injuries causing his death   The structure and location of the box were such as was usual on engines burning oil, and it was usual, in its use, for oil and dust to accumulate on the lid.   No care to keep it otherwise was usual with the employer or expected by its servants.   Held, that no evidence appeared from which an inference of defendant's negligence could properly be drawn.   (Pp. 596–598.)

**3.—Negligence—Assumed Risk.**

The legal right of an employer to organize and conduct his business in his own way, is subject to the restriction that in so doing he must exercise ordinary care for the safety of his employes.   The fact that a risk arising from the manner in which this is done is one which the employe with knowledge of the conditions, might take without incurring the imputation of contributory negligence or assumed risk is not conclusive of absence of negligence on the part of the master; but there must be proof of such negligence to render the latter liable.   (Pp. 597, 598.)

**4.—Same—Case Distinguished.**

The rulings in this case on certified questions (Houston & T. C. R. Co. v. Alexander, 102 Texas, 497) distinguished as having reference only to the issues of assumed risk and contributory negligence, certified on the assumption that the evidence supported a finding of negligence by defendant.   (P. 598.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Grayson County.

Mrs. Alexander and others sued the Houston & T. C. R. Co. for injuries from death of her husband.   Judgment for plaintiffs having been affirmed on appeal by defendant, it thereupon obtained writ of error.

*Baker, Botts, Parker & Garwood* and *Head, Dillard, Smith & Head,* for plaintiff in error.—If Alexander had notice of the general condition of the tops of the oil boxes on defendant's engine, and it was negligence for defendant to have them in such condition, it would, of necessity, be contributory negligence on the part of said Alexander, with such knowledge, to attempt to use them in that condition. Texas & Pac. Ry. Co. v. Bradford, 66 Texas, 737, approved on this point

in Texas Cent. R. Co. v. Lyons, 34 S. W., 364, and in Crawford v. Houston & T. C. R. Co., 89 Texas, 92.

An employer is only required to furnish, for the use of his employes, tools and appliances of the usual and ordinary form and shape and keep them in the usual and ordinary condition, and is not guilty of negligence if he does this, notwithstanding injury may result to the employe therefrom, and especially is this true where, as in this case, there is no allegation or proof of the existence or use elsewhere of tools or appliances for the same purpose of a different kind, kept in a different condition. Chicago, G. W. R. Co. v. Egan, 159 Fed., 40; Grand Trunk Ry. Co. v. Ives, 144 U. S., 408; Union Pac. R. Co. v. Daniels, 152 U. S., 684; Washington & G. R. Co. v. McDade, 135 U. S., 554; Texas & Pac. R. Co. v. Barrett, 166 U. S., 617; Choctaw, O. & G. R. Co. v. McDade, 191 U. S., 64; Charnock v. Texas & Pac. R. Co., 194 U. S., 432.

"All the cases agree that the master is not bound to use the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is the test of the latter; for, in regard to the style of implement or nature of the mode of performance of any work, 'reasonably safe' means safe according to the usages, habits and ordinary risks of the business. Absolute safety is unattainable, and employers are not insurers. They are liable for consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man." Labatt's Mast. & Serv., sec. 44.

*John H. Sharp* and *J. H. Wood,* for defendants in error.—The Court of Civil Appeals found that plaintiff in error was guilty of negligence, stating the manner in which it was guilty of such negligence, and that it was the proximate cause of the death of deceased. As we understand the law, the findings of fact of the Court of Civil Appeals are conclusive unless there is absolutely no testimony upon which to base said findings. Bauman v. Jaffray, 86 Texas, 617; Houston & T. C. R. Co. v. Davenport, 102 Texas, 374.

The fact that plaintiff' in error was habitually negligent in allowing said box lid to be greasy, slippery and dangerous is no answer for injuries caused thereby. See Houston & T. C. Ry. Co. v. Turner, 99 Texas, 547; Gulf, C. & S. F. Ry. Co. v. Hill, 95 Texas, 629.

There is no evidence in the record that tends to show that deceased lost his life by reason of any risks ordinarily incident to the service. Deceased worked altogether at night, and the presumption obtains that he had had no opportunity to observe the danger incident to his employment. He had a right to presume that he had a safe place to work, and it was the duty of the plaintiff in error to use ordinary care to provide him with such a place. See Peck v. Peck, 99 Texas, 10; Smith v. Buffalo Oil Co., 99 Texas, 77; San Antonio Foundry Co. v. Drish, 38 Texas Civ. App., 215; Texas & Pac. Ry. Co. v. Archibald, 170 U. S., 665.

Mr. Justice Williams delivered the opinion of the court.

The deceased, whose death was the occasion of this action by the defendants in error for damages, was killed by a fall from the tender of one of defendant's engines at Sherman. There is no dispute or uncertainty whatever about the facts. It was the duty of deceased to put fuel oil in the oil tank of the engine, at night, when it came into Sherman from the south. His custom, and that of all who performed such service, was to enter the cab of the engine, ascend from its gangway to the top of the tender, or water tank, and walk along it until reaching a wooden box, to be described presently, then to step on the box and from it to the top of the oil tank, which stood on top of the water tank, but did not cover its entire width. After the oil had been let into the tank the descent was made over the same way. In making the descent on the night in question the deceased stepped from the top of the oil tank to that of the box, and, his foot slipping, fell to the ground and was fatally hurt. The box was one of two, exactly alike, which were parts of the regular equipment of such engines, and were fastened beside the oil tanks to the top of the water tank, or tender. It was lower than the top of the oil tank so that it was convenient to use it as a step in going up and down. It was built to contain tools used by the engineer, and, in order to turn water when it rained, its covering consisted of two lids which formed an apex over the center of the box and descended very gradually to the eaves, like a gently sloping gable roof. Grease and dirt accumulated on the lids from several causes, viz.: from the feet of men walking over them with oil or grease and dirt on their shoes, from the occasional spilling of oil in filling the tank, and from the escape of it through air and gas vents or pipes in the tank, and the settling of dust or cinders in running; and it is asserted that this condition was the cause of Alexander's foot slipping. All the witnesses say that the boxes were like those used on oil burning engines generally; that all of them soon came to be in the condition described and that there was nothing unusual in this respect in the one on which Alexander slipped. He had been employed in the railroad service for sixteen years; had been car inspector and repairer; had occasionally supplied engines with oil in daylight, and had been regularly engaged in doing that service at night six weeks or two months. On account of the use of oil as fuel for the engines it, with dirt or cinders, was necessarily on and about other parts of engines and tanks where men had to pass and the evidence shows that there was nothing peculiar in this particular in the condition of the top of the box. There is some very indefinite testimony to the effect that one of the engineers when he saw fresh grease on the box would wipe it off and that at Ennis, the next division point south of Sherman, the employes "sometimes wiped off the tool boxes and all the top of the tank." This is all the evidence tending, in the least, to show that there could have been any expectation that the tops of the boxes were to be kept free of oil and dirt for the use of the employes. The wiping sometimes done, as shown by the statement referred to, evidently was not done as part of any precautions adopted for any such purpose. On the contrary, the witnesses, with

one voice, say that the condition described was the one usual upon this and all other such engines, and it appears that the boxes were walked over as they were, not only by those oiling engines as was deceased, but by firemen having occasion to go on the top of the tender.

We are unable to see any foundation in this evidence for a finding of negligence; and, if there was no negligence, the deceased suffered from one of the risks ordinarily incident to the service. Negligence must consist of the doing of something which a person of ordinary prudence would not have done, or the omission to do something which such person would have done, under like circumstances; and that which is relied on as constituting negligence must appear to be such from evidence offered. Was the mere keeping of the box in such a position for such a purpose an act which persons of ordinary prudence using such engines would not have done? It is not asserted that it was. On the contrary, if the evidence is true, they all did it. Was the failure to keep from it the grease and dirt such an omission? The evidence, without controversy, shows that the condition existing in this respect was the usual and normal one resulting from the use to which the box was put. There was nothing in it differing from that of such things customarily furnished for the use of employes in the railroad business. It was not an unusual or unexpected condition in any respect, nor one from which the employes looked for protection by precautions taken by the employer. When the condition, only complained of after the event, thus conclusively appears to have been so treated by employer and employes engaged and skilled in the business, differing in no respect from others following the same business, how can a court or a jury say that there was a failure to use the care which persons of ordinary prudence would devote to that subject? How can any conclusion be sustained but that the conduct of the business in this instance was as it is in others and that those engaged in it so regarded it and treated the risk resulting as one of the incidents of that business?

It is true that this court has never adopted that theory of the duty of the employer to his employes which concedes to him the legal right to organize and conduct his business in his own way, however regardless it may be of their safety, if he will only let them know of the dangers to which he exposes them and obtain their consent to incur them. That the doctrines of assumed risk and contributory negligence have often precluded them from complaining, does not entirely preclude the operation of the principle to which this court has always adhered, that the law imposes on employers the duty, in planning and pursuing their businesses, to exercise ordinary care with regard to the safety of the employes, and what we say of the facts of this case is said in full recognition of that principle. But what is the standard by which the question, whether or not that care has been exercised, is to be determined but the conduct of prudent and careful men in the business under investigation? And when the evidence not only fails to show a departure from the line of conduct pursued by such men, but shows affirmatively complete conformity to it, how can the conclusion of negligence be drawn? Whatever the

experience of jurors may enable them to know of affairs of some kinds, it is certainly not true that they can · be held to know how such a business as that here in question should be conducted better than all the employers and employes engaged in it. With only such evidence in the case no issue is presented for a jury to pass upon. The contention for the plaintiff seems to be that the top of the box should have been kept clean. The statement made shows that there was no practice of doing so and that no one expected it to be done. How then is it to be inferred that prudence required that it be done in the proper management of the business? What efforts would have been adequate to the end and could they have kept the box in a safer condition than would result from its being let alone? The evidence furnishes no other answer than that found in the settled practice of all concerned.

The case is very different from those in which the prevalence of a negligent habit or custom among some employers is invoked as a defense when it has caused injury. In such cases evidence is furnished from which that which was done may be pronounced to have been negligence, and it is therefore held that the constant doing of it is no justification. Here the very test of negligence, when applied to the evidence, can result in no conclusion of its existence.

Our former opinion on certified question (102 Texas, 497), which was thought by the Court of Civil Appeals to control its judgment, was not addressed to the question of negligence on the part of the defendant, but to that as to the assumption by the deceased of a risk assumed to have resulted from his employer's negligence. Of course, a question as to the assumption of a risk growing out of the defendant's negligence could not arise until there was evidence of such negligence. The manner of certifying the question implied that the Court of Civil Appeals had found that there was such evidence, and this court could only treat the case on that assumption. The entire record is now before us and the statement of facts can be examined for the purpose of seeing whether or not the evidence furnishes any foundation in law for the recovery, and finding that it does not, we must reverse the judgment.

*Reversed and rendered.*