SKELTON & WEAR v. WOLFE et ux.
(No. 8725.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 10, 1917. On Motion for Rehearing, Dec. 15, 1917. On Second Motion for Rehearing, Feb. 2, 1918.)

1. REMOVAL OF CAUSES ☞74 — AMOUNT IN CONTROVERSY—AMOUNT CLAIMED.

Where plaintiff, after filing petition claiming $10,000 damages, filed an amended petition reducing the claim to $3,000, nonresident defendants' application for removal to federal court was properly denied, although property attached for purpose of levying under original petition was appraised at $10,000 by the officer making the levy, the appraised value not determining the jurisdiction, although the property had not been released from levy.

2. REMOVAL OF CAUSES ☞75 — AMOUNT IN CONTROVERSY—AMENDMENT OF PETITION—NOTICE.

In such case, where notice of amendment was given within five days as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 1824, the amended petition became effective against defendant's right of removal, although petition for removal was filed before notice of amendment was served.

3. MASTER AND SERVANT ☞278(11)—DEFECTIVE APPLIANCES — SUFFICIENCY OF EVIDENCE.

Evidence held insufficient to sustain allegation that "gun" used by intestate, killed by breaking of electric wire in defendant's glass factory, was in an unsafe condition.

4. APPEAL AND ERROR ☞1062(1)—SUBMISSION OF ISSUES—REVERSIBLE ERROR.

Where the only alleged defects in the gun used by a servant were that it contained no guard to prevent the wire used in cutting glass from flying back and striking him in the event the wire should break while the current was on, and that the dial on the gun was out of order and did not show whether the current was off or on, submitting issue of defective gun was reversible error; there being no proof that gun could have been provided with such guard or that failure of dial to register caused or contributed to the injury.

5. MASTER AND SERVANT ☞356 — ASSUMED RISK—AVAILABLE UNDER STATUTE.

Where defendants did not contend that they were subscribers to the Employers' Insurance Association, under Vernon's Sayles' Ann. Civ. St. 1914, art. 5246h, or had been precluded from becoming such by article 5246hh, the court properly denied to them the defense of assumed risk.

6. MASTER AND SERVANT ☞101, 102(8)—DEGREE OF CARE—HOW DETERMINED.

That defendant employers were operating their glass factory in the same manner and using and furnishing the same character of machinery and appliances as other well-regulated concerns would not relieve them from liability if they failed to exercise ordinary care.

On Motion for Rehearing.

7. APPEAL AND ERROR ☞729—ASSIGNMENT OF ERROR—SUFFICIENCY.

Defendants' assignment that the court erred in submitting the issue as to defect in gun used by intestate in defendants' glass factory, be-

cause there was no testimony to show that the gun was defective, although general, was sufficient to present question that judgment should be reversed because of submission of such issue.

8. MASTER AND SERVANT ☞108—DEFECTIVE APPLIANCES.

If the absence of the dial did not contribute to the injury, it cannot be said that it rendered the gun unsafe for the particular use made of it by the servant.

On Second Motion for Rehearing.

9. APPEAL AND ERROR ☞882(14)—INVITED ERROR—INSTRUCTIONS.

After defendants had specifically excepted to the portion of the charge submitting, as a distinct and separate basis for recovery, the defective condition of the gun used by the servant, they did not waive their objection by requesting an instruction that, if defendants exercised ordinary care to furnish a reasonably safe place in which to work and reasonably safe appliances, the verdict should be for defendants.

Appeal from District Court, Wichita County; E. W. Nicholson, Judge.

Action by J. C. Wolfe and wife against Skelton & Wear, a partnership firm, composed of L. F. Skelton and F. E. Wear. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Martin, Bullington, Boone & Humphrey, of Wichita Falls, for appellants. Weeks & Weeks, of Wichita Falls, for appellees.

DUNKLIN, J. L. F. Skelton and F. E. Wear, composing the partnership firm of Skelton & Wear, were engaged in operating a window glass factory in the town of Wichita Falls, Tex. Chas. D. Wolfe, one of their employés in the factory, was killed by coming in contact with an electric wire. This suit was instituted against Skelton & Wear by J. C. Wolfe and wife, the parents of Chas. D. Wolfe, to recover damages occasioned by the loss of his services, it being alleged that the death of Chas. D. Wolfe was caused by defendants' negligence, and from a judgment in favor of plaintiffs, the defendants have appealed.

Plaintiffs alleged that they resided in Wichita county, Tex.; that defendant Skelton resided in Okmulgee, Okl., and defendant Wear resided in Kansas City, Mo. In their original petition plaintiffs claimed damages in the sum of $10,000. At the time that petition was filed plaintiff also filed an affidavit in which it was stated that neither of the defendants resided in this state. By reason of that fact the issuance of a writ of attachment was prayed for, for the purpose of levying upon property in Wichita county belonging to the defendants. At the same time a statutory bond was filed as a further basis for the issuance of the writ. A writ of attachment was then issued and levied upon certain personal property located in one of defendants' warehouses, which constituted a part of their manufacturing plant in Wichita county, which was appraised by the officer making the levy at the aggregate

sum of $10,000, as shown by his return upon the writ. The original petition was filed July 16, 1916, and the writ of attachment was levied August 2, 1916. On August 28, 1916, plaintiffs filed an amended petition in which their demand for damages was reduced from $10,000, as claimed in the original petition, to the sum of $3,000. On August 29, 1916, the day following such reduction of plaintiffs' demand, defendants filed a petition for removal of the case to the federal court, alleging that the cause of action was between citizens of different states, and that the amount in controversy exceeded the sum of $3,000. At the time of filing said petition for removal the defendants also filed a statutory bond for such removal, and served written notice on plaintiffs that they would present the petition for hearing on the 5th day of September following. On the day so appointed the petition was heard by the judge of the court in which the suit had been filed, and was by him overruled, to which action the defendants duly excepted.

[1] The first assignment is addressed to the action of the court in overruling the petition for removal. None of the property levied on by virtue of the writ of attachment was released from that levy, but was held thereunder until final judgment was rendered, at which time the lien claimed by the attachment was foreclosed, and the property ordered to be sold, and the proceeds applied to the payment of the judgment, which was in plaintiffs' favor for the sum of $3,000. Appellants insist that, as the property impounded under and by virtue of the levy of the writ of attachment was appraised by the officer making the levy at the sum of $10,000, the value of the property so fixed was the true measure of the amount in controversy in the suit, rather than the sum of $3,000, the amount claimed in the amended petition, and that therefore the cause should have been removed to the federal court. In support of the contention appellants have cited the case of Hoover & Allen v. Paper Company (C. C.) 68 Fed. 945. That was a suit instituted in a state court against a nonresident, whose property in the state was attached for jurisdictional purposes. The amount of the demand was less than $2,000, while the value of the property attached was in excess of $2,000. The receiver of the defendant company claimed the right of possession of the property as against the officer holding the same under and by virtue of his levy of the writ of attachment, and his petition for a removal of his suit for such possession was granted by the state court, and a motion in the federal court to remand was overruled; the court holding that the value of the property claimed by the receiver was the amount in controversy as between him and the parties to the suit, and that that branch of the suit was properly removed. In the opinion the case of

Lehigh Zinc & Iron Co. v. N. J. Zinc & Iron Co. (C. C.) 43 Fed. 545, was cited as supporting the decision, and with reference to that decision the court said:

"In that case a bill was filed to quiet title, and it was held that, for the purpose of determining the jurisdictional amount, the whole value, of the property, the possession and enjoyment of which was threatened by the defendant, was the measure of the value of the matters in controversy."

The case of Farmer's Bank of Alexandria v. John Hooff, 7 Pet. 168, 8 L. Ed. 646, was a suit to foreclose a mortgage lien on certain real estate which had been given to secure a debt for less than $1,000. Chief Justice Marshall, after reciting the fact that the appeal was from an order dismissing the suit for want of jurisdiction in that the amount in controversy was the amount of the debt sued for which was less than $1,000, used the following language:

"The appellant alleges in support of the jurisdiction of the court that the real question is whether the debtor be entitled to the lot, and as that is worth more than $1,000, this court may take jurisdiction, though the sum claimed in the bill is less.

"The court is of a different opinion. The real matter in controversy is the debt claimed in the bill; and though the title of the lot may be inquired into incidentally, it does not constitute the object of the suit."

To the same effect are the following authorities: Squire v. Robertson (C. C.) 191 Fed. 733; Bucyrus Co. v. McArthur (D. C.) 219 Fed. 266; Foster's Federal Practice, vol. 2, par. 10.

We do not think that the authorities relied upon by appellants are in conflict with the authorities last cited, which we believe are decisive of the question now under discussion in favor of the appellees. While the latter cases seem to have been suits to foreclose contract liens, we are unable to perceive any reason upon principle why they should not apply in a case like the present, in which the prayer to subject the property attached to the payment of any judgment that plaintiffs might recover is merely an incident to the cause of action asserted by plaintiffs.

In Cotulla v. Goggan, 77 Tex. 32, 13 S. W. 742, and other authorities cited in Stricklin v. Arrington & Carter, 141 S. W. 189, it was held that in suits to enforce liens upon personal property the value of the property determines the jurisdiction of the court. However, in those decisions no federal question was involved, and even though it should be said that they are at variance with the rule announced in the federal decisions cited above, the latter would be controlling in the present instance, since the question involved is one pertaining to federal procedure.

[2] Plaintiffs' second amended petition was filed in vacation, and notice of such filing was given to the defendants three days thereafter, which was August 31st. By article 1824, V. S. Texas Civil Statutes, any party to a suit is given the right to file amended

pleadings in vacation provided notice thereof is given to the opposing parties within five days after such amendment is filed. Appellants insist, in effect, that the filing of the amended petition did not become effective as against their right of removal of the cause until the notice of the filing was served upon them, and as the petition and bond for removal were filed prior to the giving of such notice, the amount in controversy was the amount claimed in the original petition, notwithstanding the amended petition had been filed one day prior to the filing of the petition and bond for removal. We overrule this contention. The filing of the amended petition was certainly effective as an abandonment of plaintiffs' original claim for $10,000 damages, and after it was filed the original petition was no longer a pleading in the case. And at the time the petition and bond for removal was filed it could not be said that plaintiff was claiming damages in excess of $3,000. Notice of such filing was given in compliance with the statutes. Even the failure to give the notice within such period would not have reinstated the original petition. The exact question was determined adversely to appellants' contention in W. U. Tel. Co. v. Campbell, 41 Tex. Civ. App. 204, 91 S. W. 312, and we think the reasoning advanced in that decision is sound.

From a switch immediately above the floor upon which Chas. Wolfe was working at the time of his death a wire called the "lead wire" and carrying a current of 110 volts of electricity, connected with an appliance called the "gun." The glass is first blown in rolls of cylindrical shape. Those rolls are then placed on a support called a "horse," one at a time, and cut in pieces by means of the electric current coming from the lead wire through the gun to another wire wrapped around the roll, both ends of that wire being attached to the gun, one end being first attached, and the other attached after the wire has been wound around the roll. The lead wire is attached to one side of the gun while both ends of the other wire are attached to the other side. The gun consists of two small pieces of wood fastened together. There is a button on the gun by means of which the current of electricity from the lead wire is turned into, or cut off from, the other wire by connecting or disconnecting the two wires. There is also a dial on the gun with the printed words "On" and "Off," to indicate whether or not the current is passing between the two wires. The person who cuts the rolls of glass is called the "capper," and in doing so he first wraps the cutting wire around the roll, one end of which is already attached to the gun, and after the other end is also attached to the gun the current of electricity is turned from the lead wire into the cutting wire by so turning the button as to connect the two wires ,which theretofore have not been connected. The wires are thus manipulated by the capper while he holds the gun in his left hand and operates the button with his right hand. When the current is turned on the encircling wire is extremely hot, and by reason of the intense heat the wire cuts through the roll of glass, but there is a small portion of the circle which is not touched by the wire. That is cut when the capper places a wet chisel against it. The capper has a helper who is called the "snapper." The snapper places the rolls of glass on the horse, and stands behind and near the capper while the cutting is being done, after which he removes the pieces of glass that have been cut. On the lead wire and about two feet from it is an appliance within easy reach of the snapper called the "socket," by means of which the current can be cut off from the gun, and the snapper can do that by a simple jerk of the wire.

On the day Chas. Wolfe was killed he was engaged as a capper. After cutting a roll of glass with the wire in the manner described above, he placed his chisel against the portion of the roll not touched by the wire, in order to cut that, too, when the cutting wire broke, and a portion of it still charged with electricity flew back and wrapped around his body. When he received the shock he sank slowly to the floor, calling for help at the time. Wallace, who was serving as his snapper, did not disconnect the current so as to release him, but other employés hurried to his side and severed the connection, but too late to save his life.

The plaintiffs' petition contains nine separate and distinct specifications of negligence, each of which was alleged as the proximate cause of the death of Chas. D. Wolfe. The trial was before a jury, who returned a verdict in response to the general charge of the court, in which only four of the specifications of negligence were submitted. Those issues were: (1) The failure of the defendants to provide a rubber mat for the deceased to stand thereon while engaged in his work, such mat to serve to insulate him from the wooden floor of defendants' factory where he stood at the time he received the fatal shock; (2) charging the wires with which deceased was working at the time of his death with a current of electricity of 110 voltage, when a current of only 55 volts was all that was reasonably necessary to do the same work; (3) furnishing an incompetent assistant called a "snapper," one of the duties of whose employment was to cut off the current immediately in case the capper should come in contact therewith; and (4) furnishing a defective gun with which to work. And the jury was told that if any one of those allegations of negligence was sustained by proof, and if such negligence was the proximate cause of the accident, a verdict should be returned in plaintiffs' favor. Appellants complain of the refusal of their request for a peremptory instruction based upon their contention that none of the

charges of negligence submitted in the court's instruction was sustained by proof sufficient to warrant a verdict in plaintiffs' favor thereon.

We are unable to agree with that contention. We are of the opinion that the evidence was sufficient to sustain a finding in plaintiffs' favor upon the three issues of negligence first mentioned; but we shall not undertake to set out the evidence as the same would serve no useful purpose.

[3, 4] But we are of the opinion that the evidence was insufficient to sustain a finding in plaintiffs' favor upon the issue of negligence based upon allegations that the gun with which Wolfe was working at the time of his death was in a defective and unsafe condition. One of the defects in the gun alleged in the plaintiffs' petition was that it contained no guard or appliance to prevent the wire used in cutting the glass from flying back and striking the capper in the event it should break while the current was on. The only other defect alleged in the gun was that the dial on the gun was out of order, and by reason of that condition would not show whether the current was on or off the cutting wire.

If these were defects, they were conclusively established by the evidence. But there was no proof to show that the gun could have been provided with such a guard, as alleged, without impairing the usefulness of the gun, nor was there any proof to show that the failure of the dial to so register in any manner caused or contributed to the injury received by Chas. D. Wolfe, and for that reason it was error to submit the alleged negligence in furnishing a gun in a defective condition as a basis for a recovery. For that error the judgment must be reversed. The only evidence cited in appellees' brief to sustain that allegation of negligence consists of testimony to the effect that a portion of the lead wire a few inches from the point where it was fastened to the gun was without proper insulation, and other testimony tending to show that that uninsulated portion of the wire came in contact with the body of Chas. Wolfe at the time he received the fatal shock. But such proof itself showed that that portion of the wire was in no sense a part of the gun; in fact, in plaintiffs' petition following allegations of a defective condition of the gun, in that it was not provided with a guard, and that the dial thereon was out of order, is the separate and distinct specification of negligence in furnishing for deceased's use the lead wire in an uninsulated condition.

[5] By different assignments of error complaint is made of the action of the trial court in denying to defendants the right to avail themselves of their plea of assumed risk; such plea being, in effect, that the dangers from which Chas. Wolfe came to his death were risks ordinarily incident to the duties of his employment, which were known to him at the time he undertook to perform the services in which he was engaged which resulted in his death, and that by reason thereof he assumed the risk of such an injury which would prevent a recovery by plaintiffs.

These assignments are all overruled, since by article 5246h, V. S. Texas Civil Statutes, it is provided that an employer who is not a subscriber to the Texas Employers' Insurance Association and is not precluded from becoming such by article 5246hh is denied the right to urge the defense of assumed risk in actions of this character, and since appellants do not contend that they were such subscribers, nor that they were precluded from becoming such by the terms of the latter article. Memphis Cotton Oil Co. v. Tolbert, 171 S. W. 309; Middleton v. Texas Power & Light Co. (Sup.) 185 S. W. 556.

[6] Another contention presented by several assignments in different forms was substantially to the effect that, if the proof showed that the defendants were operating their glass factory in the same manner and using and furnishing the same character of machinery, appliances, equipment, and the same character of place in which to work as were actually employed by other prudent, well-regulated concerns operating and engaged in the same character of business, then they were not guilty of actionable negligence, and that the court erred in failing to so charge the jury.

We think this contention is unsound. Appellants have cited H. & T. C. Ry. Co. v. Alexander, 103 Tex. 594, 132 S. W. 119, and Taylor v. White, 156 S. W. 349. There are some expressions in those decisions to the effect that, if the master, who is charged with negligence, can show that the business in question was conducted in the same manner as that pursued by other prudent, well-regulated concerns of the same character, he cannot be held liable to a servant for damages resulting therefrom. But we do not understand that they go to the extent of denying the general principle that negligence consists of the failure to exercise ordinary care, and that ordinary care is the failure to do that which a person of ordinary prudence would have done, or the doing of that which a person of ordinary prudence would not have done under the same or similar circumstances; in other words, the test at last is how a person of ordinary prudence would have acted under the same or similar circumstances. We do not construe those decisions as holding otherwise than that there was no evidence adduced in those cases from which negligence could be reasonably inferred. In G., C. & S. F. Ry. Co. v. Evansich, 61 Tex. 3, our Supreme Court used the following language:

"While it is true that an established custom may be looked to, in many cases, for the purpose of determining what parties really intended by a given contract, and what acts in the performance of it will satisfy it, it may well be questioned whether in any case in which, in

the absence of contract, express or implied, negligence as an element is the foundation of a right, custom may be set up for the purpose of showing that negligence does or does not exist. In such cases it would seem that the question whether negligence exists must be determined by the facts in the very case in which the question arises"—citing numerous authorities.

In G., C. & S. F. Ry. Co. v. Smith, 87 Tex. 348, 28 S. W. 520, the question of whether or not the railway company's servants were guilty of negligence in making a flying switch was an issue. The trial court charged the jury that that method of making a switch would be negligence if it was unsafe and dangerous, and was not such a method as is permitted by railway companies exercising care and prudence in the conduct and management of their trains. Is discussing that charge our Supreme Court used the following language:

"The effect of the foregoing charge is to inform the jury that, if 'other railroad companies exercising care and prudence in the conduct and management of their trains' prohibit flying switches, then it would be negligence for the defendant's employés to make them. There is no statute nor positive rule of law which forbids the making of 'flying' or 'running' switches, and it cannot be declared by the court to be negligence; nor can the question of negligence be made to depend upon what other railroad companies forbid or permit to be done. Whether or not the making of the flying switch was negligence was a question of fact to be determined by the jury under all the circumstances of the case."

To the same effect are the following authorities: I. & G. N. Ry. Co. v. Hawes, 54 S. W. 325 (writ of error denied); Kirby Lumber Co. v. Dickerson, 42 Tex. Civ. App. 504, 94 S. W. 153; 3 Labatt's Master & Servant, § 947.

For the error indicated the judgment is reversed, and the cause remanded.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.

## On Motion for Rehearing.

DUNKLIN, J. [7] Appellees insist that the assignment of error to that portion of the charge of the court which submitted the issue of the defective gun as a basis for recovery did not present the contention that there was no showing that such defects were the proximate cause of the injury, as was held by the court upon original hearing.

By the court's instruction the jury were told, in effect, that if they found from the evidence that the gun was unsafe and unsuitable for the purposes for which it was being used by Chas. D. Wolfe at the time of his injury, and that defendants were guilty of negligence in furnishing to him the gun in that condition, and that if they should further find that such negligence was the direct and proximate cause of his injury, then a verdict should be returned in plaintiffs' favor.

In the bill of exception taken by appellants upon the trial to that instruction two reasons were assigned, one being that the uncontradicted testimony showed the gun to be in a safe and suitable condition for all purposes, and was such as is used by all manufacturers engaged in the same business, and the other reason was that there was no testimony to show that the gun was unsafe or unsuitable.

[8] The first stated ground of objection to the instruction as was not tenable. While the second ground of objection was perhaps inaptly expressed, since it did not specifically state that there was an absence of proof that the defective condition of the dial on the gun rendered it unsafe for the use Wolfe was making of it at the time of his injury, or that the gun was unsuitable for such use by reason of the absence of a guard, yet we think that such was evidently its meaning, and that it was sufficient to sustain our conclusion that the judgment should be reversed because said charge was given. As said in our original opinion, it was proven beyond controversy that the dial on the gun was not in a workable condition, but there was no evidence to show that that condition in any manner contributed to the injury. If it did not contribute to the injury, then it cannot be said that the absence of the dial rendered the gun unsafe or unsuitable for the particular use being made of it at the time of Wolfe's injury, which was the gist of plaintiffs' complaint, since there was no proof that he was using the gun or attempting to use it at all at that time.

Appellees insist further that the judgment should not be reversed by reason of that instruction of the court, since, as is claimed by them, there was evidence tending to show that the lead wire attached to the gun was in a defective condition, which condition contributed to the injury, and that said lead wire was understood by the witnesses and by the court, jury, and counsel engaged in the trial to be a part of the gun itself. We do not think that that contention is borne out by the record cited by appellees to support it. As noted in our original opinion, the defective condition of the lead wire was alleged as a separate and distinct basis of recovery, and the testimony relating thereto fails to show that it could be properly considered as any part of the gun. Accordingly appellees' motion for rehearing is overruled.

Appellants also insist that we were in error in our conclusions that the evidence was sufficient to warrant a submission of the other three issues of negligence mentioned in the original opinion. After further consideration we are convinced that our conclusions as originally expressed upon those issues were correct. We think no useful purpose can be subserved by reviewing the evidence upon these issues, and, without further dis-

cussion, appellants' motion for rehearing is also overruled.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.

On Second Motion for Rehearing.

DUNKLIN, J. One of the propositions urged in appellees' motion for rehearing was that, if the court erred in submitting the alleged negligent condition of the gun as a basis for recovery, such error was invited by appellants. The requested instruction of appellants was in general terms and to the effect that, if the defendants exercised ordinary care to furnish Charles Wolfe a reasonably safe place to work and reasonably safe machinery and appliances with which to work, then the verdict should be returned in favor of the defendants.

The requested instruction did not contain any statement that it was presented subject to the exceptions taken to that portion of the charge of the court submitting the alleged negligent condition of the gun as a basis for recovery.

[9] This court fully recognizes the rule that, if an error is invited, no successful complaint can be made of it on appeal, and has often enforced that rule; but we think it would be an unreasonable application of the rule to say that after appellants had specifically excepted to that portion of the charge submitting the alleged negligent condition of the gun as a distinct and separate basis of recovery they waived their objections by the requested instruction above mentioned. As noted, that instruction was in general terms and with no special reference to any of the several grounds of negligence submitted by the court to the jury, and the substance of it was given by the trial court, and properly so in view of the other grounds of negligence submitted.

Appellants' contention now under discussion was not overlooked in our consideration of the original motion for rehearing, but it was not discussed and this additional conclusion is filed at the earnest instance of the appellees in their second motion for rehearing, which is overruled; appellees having been granted leave to file said motion.

Motion overruled.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.