TAYLOR v. WHITE. (No. 19–2620.)

(Commission of Appeals of Texas, Section A. June 11, 1919.)

1. MASTER AND SERVANT ⬩105(2) — SAFE PLACE TO WORK—ELECTRIC POWER PLANT—EXCITER—FAILURE TO GUARD.

An employer operating an electric power plant is not negligent in failing to fence an exciter which is covered with shield leaving no ex-

posure except openings for adjusting and cleaning machine, where other employers in same line of business did not fence in exciters by guard rails, and employé who came in contact with machine was experienced and familiar with the surroundings.

2. MASTER AND SERVANT ⬩101, 102(8)—DUTY OF MASTER—SAFE PLACE TO WORK—SAFE APPLIANCES.

Master is required to exercise ordinary care to provide servant with safe place to work and with reasonably safe and suitable machinery and appliances.

3. MASTER AND SERVANT ⬩101, 102(2) — DUTY OF MASTER—SAFE PLACE TO WORK—SAFE APPLIANCES.

Master is not an insurer of servant's safety, but is required to exercise that degree of care which an ordinarily prudent person engaged in like business would have exercised under similar circumstances.

4. MASTER AND SERVANT ⬩105(1), 265(9)—SAFE PLACE TO WORK—CUSTOMS OF OTHER EMPLOYERS—NEGLIGENCE—PRESUMPTIONS.

The custom of others engaged in like business is not the absolute test of negligence in failing to provide safe working place appliances, but where master was conducting his business in accordance with the uniform custom of others, it devolves upon servant to show that custom is negligent; the presumption being that persons in like business are reasonably prudent.

5. MASTER AND SERVANT ⬩101, 102(4)—SAFE PLACE TO WORK—PROMISE TO REMOVE DEFECTS.

Before master can be held liable for failure to perform a promise to remove a specific danger, it is necessary to show that the existing conditions were of such a nature that their maintenance implied culpability.

6. MASTER AND SERVANT ⬩217(18) — ASSUMPTION OF RISK—FAILURE TO PROVIDE GUARD RAIL AROUND EXCITER.

An experienced employé familiar with an unfenced exciter in an electric power plant and fully appreciating danger of injury from contact with it while in operation assumes the risk.

7. MASTER AND SERVANT ⬩221(5)—ASSUMPTION OF RISK—PROMISE TO REMOVE DEFECT.

A servant is not relieved of the assumption of risks of a known defect by reason of a promise to remedy unless he continues in the service in reliance on such promise and has reasonable grounds to expect its fulfillment.

8. MASTER AND SERVANT ⬩216(1)—NEGLIGENCE OF FELLOW SERVANT.

Servant assumes risks caused by negligence of fellow servant.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by W. W. Taylor against Frank A. White. Judgment for defendant affirmed by Court of Civil Appeals (156 S. W. 349), and plaintiff brings error. Affirmed.

---

Synnott & Fish and C. B. Reeder, all of Amarillo, for plaintiff in error.

Turner & Wharton and Veale & Lumpkin, all of Amarillo, for defendant in error.

STRONG, J. The question presented in this case is whether or not the plaintiff, Taylor, who sued for damages for personal injuries alleged to have been caused by the negligence of defendant, adduced evidence sufficient to entitle him to have his case submitted to the jury.

The trial court directed the jury to return a verdict for defendant. A full statement of the evidence will be found in the opinion by the Court of Civil Appeals affirming the judgment of the trial court. 156 S. W. 349.

In substance the testimony shows that at the time of his injury plaintiff was engaged as engineer in the Amarillo Light & Power Plant, which was being operated by defendant as receiver. In the engine room of the plant was located a machine known as an exciter. This machine was shaped like a cylinder and was about 30 feet long and 12 feet in diameter. It was covered with a metal casing about 2 feet in diameter with four openings in it, 6 inches wide at one end, and about 18 inches at the other, and 16 or 18 inches long. It was about 2 feet from the top of this casing to the floor, and inside of it was a commutator, a cylinder about 12 inches in diameter and 36 inches long, extending the length of the casing. The commutator was smooth with brushes set in the frame which rested on the cylinder, and when the cylinder revolved the friction between it and the brushes generated the electricity. The cylinder when running made 750 revolutions per minute. The exciter was located about 6 feet north of one of the engines in the room and about 3 feet south of another. West of the exciter about 3 feet was a hole in the floor leading to the basement bannistered on three sides. The exciter had a bannister on the east side of it. The exciter was located in open view with ample room for passage around it. Plaintiff's duties require him to pass in close proximity to the exciter every five or ten minutes. It was a part of his duties to clean the exciter and put in new brushes. On the occasion of his injury plaintiff was engaged in cleaning the exciter, and, passing around the machine from one side to the other, he stumbled over a wrench which he did not see, and fell with his breast on the frame of the exciter, his right hand going into the machine, causing the injuries complained of. The wrench over which plaintiff stumbled had been left on the floor about ten minutes before the accident by a fellow servant of plaintiff who was assisting him in his work.

The negligence alleged is that defendant failed to place a guard rail around the exciter, and that defendant negligently placed the wrench over which the plaintiff stumbled in close proximity to the exciter. Plaintiff also alleged in reply to the plea of assumed risk that defendant promised to put a guard around the exciter, and that, relying on said promise, he remained in the service.

[1-3] In our opinion, the evidence is not sufficient to show that defendant was guilty of negligence in failing to provide a guard rail. The master is required to exercise ordinary care to provide his servant with a safe place to work and with reasonably safe and suitable machinery and appliances with which to do his work; but he is not an insurer. The measure of care required of the master is that degree of care which an ordinarily prudent person engaged in the same kind of business would have exercised under like or similar circumstances. The best evidence of the degree of care which an ordinarily prudent person would have exercised under given circumstances is the degree of care which ordinarily prudent persons engaged in the same kind of business customarily have exercised and commonly do exercise under like circumstances.

[4] The evidence without controversy shows that exciters of like kind were in general use throughout the country, and that no guard rails were provided in any of the plants using these machines to protect the employés. The custom of others engaged in like business is not the absolute test of negligence, but where the undisputed evidence shows affirmatively, as it does in this case, that the defendant was conducting his business in accordance with the uniform custom of persons engaged in like business, it devolves upon the plaintiff, before he can recover, to produce evidence showing that such custom is negligent. In the absence of such testimony, the legal presumption is that those engaged in like business were reasonably prudent in the conduct of their business, and that they discharged their legal obligations for the safety of their servants. Railway Co. v. Alexander, 103 Tex. 594, 132 S. W. 119; Railway Co. v. Senske, 201 Fed. 637, 120 C. C. A. 65.

The exciter upon which plaintiff was injured was covered with a shield, leaving no exposure except openings sufficient for the purpose of adjusting and cleaning the machine. The location of the other machinery in the engine room did not in any way interfere with or obstruct the view or passageway around the exciter. Plaintiff was an experienced servant, perfectly familiar with the exciter and its surroundings, and fully appreciated the danger of being injured if he should come in contact with it while in operation. He had worked around this machine constantly for about eleven months, and in the plant for about three years. We

do not think under such circumstances that a master in the exercise of that care required of him for the safety of his servant could reasonably anticipate that a servant while in the exercise of ordinary care for his own safety would be injured by coming in contact with the exciter in the absence of a guard rail.

[5] The evidence being insufficient to show that defendant was guilty of negligence in failing to provide a guard rail, the promise of defendant's superintendent to provide such rail, if made, and relied upon by plaintiff as alleged, would not entitle him to recover. The rule is well established that, before the master can be held liable for a failure to perform a promise to remove a specific danger, it is necessary to show that the existing conditions were of such a nature that their maintenance implied culpability. 4 Labatt's Master and Servant, 3868; Coin v. Lounge Co., 222 Mo. 488, 121 S. W. 1, 25 L. R. A. (N. S.) 1179, 17 Ann. Cas. 888.

[6] We are of the opinion that the trial court's action in withdrawing the case from the jury should be sustained upon another ground. If it be conceded that the evidence is sufficient to show negligence in failing to provide a guard rail around the exciter, the undisputed evidence shows that plaintiff had full knowledge of the defect and the added danger. This being true, plaintiff assumed the additional risk caused by such negligence unless relieved therefrom by the promise of defendant's superintendent to remedy the defect.

[7] A servant is not relieved of the assumption of the risks of a known defect by reason of a promise to remedy or repair unless it appears that his continuance in the service was in reliance on such promise. The authorities on this subject generally limit the operation of the promise, as preventing the conclusion that the servant has assumed the risk, to a reasonable time for the master to comply, and, when it is or should be manifest to the servant that the defect will not be remedied, a further continuance in the service will be an assumption of the risk. Hilje v. Hettich, 95 Tex. 321, 67 S. W. 90. Plaintiff testified that he first requested defendant's superintendent to provide a guard rail about eight months before he was injured, and received his promise that he would attend to it "right away"; that he renewed the request about four months later, the superintendent saying he would fix it as soon as he could get to it; that he mentioned the matter the last time about six weeks or two months before he was injured, and the superintendent replied, "I will fix it as soon as I can get to it, right away." Plaintiff did not testify that he remained in the service relying on the promise to provide a

guard rail, and we think it clearly appears from his testimony that he did not. He must have known, from the many promises made and broken covering a period of eight months, that defendant had no intention of remedying the alleged defect. To be relieved of the assumption of the risks of a known defect by reason of a promise to remedy, the servant must have reasonable grounds to expect that the promise will be fulfilled. Railway v. Bingle, 91 Tex. 287, 42 S. W. 971.

[8] The only other ground of negligence alleged is that defendant negligently placed the wrench over which plaintiff tripped and fell in close proximity to the exciter. The undisputed evidence shows that the wrench was placed on the floor about ten minutes before the accident by a fellow servant of plaintiff who was assisting him in his work. The rule is well settled in this state that the servant assumes the risks caused by the negligence of his fellow servants. Railway v. Blohn, 73 Tex. 637, 11 S. W. 867, 4 L. R. A. 764; Robinson v. Railway, 46 Tex. 541.

We are of opinion that the judgment of the trial court and that of the Court of Civil Appeals should be affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.