## CAMERON COMPRESS CO. v. WHITING-TON. (No. 757–4353.)

(Commission of Appeals of Texas, Section A. Feb. 17, 1926.)

1. **Warehousemen ⊚≈24(7)—Receipt releasing warehouseman from consequences of negligence causing loss by fire held invalid (Rev. St. 1925, arts. 5619, 5633).**

Receipt, wherein warehouseman released itself from liability for goods stored with it for fire, *held* invalid, in view of Rev. St. 1925, arts. 5619, 5633, in so far as it attempted to excuse warehouseman from consequences of its negligence.

2. **Negligence ⊚≈4—"Ordinary care" and "ordinarily prudent person" defined.**

"Ordinary care" is such care and diligence as a person of ordinary prudence and caution would commonly exercise under like circumstances; and "ordinarily prudent person" is the general average of mankind, and his identity cannot be established without taking into account strength and frailties and practices of all other men.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ordinarily Prudent Man; Ordinary Care.]

3. **Warehousemen ⊚≈34(6)—Expert testimony as to extinguishment of fires by automatic sprinklers held admissible.**

Expert testimony concerning extinguishing of fires by automatic sprinklers *held* admissible, since it might assist jury in determining whether warehouseman was negligent in not having such a system on its property for protection of goods from fire in its custody.

4. **Warehousemen ⊚≈34(6)—Compress company, charged with negligence for lack of proper devices, may prove its devices are of kind customarily used.**

Where lack of proper devices is charged as negligence, compress company may present evidential fact that such devices as it has, are of the kind customarily used with good results by those comparably situated, but weight of such proof is for jury.

5. **Warehousemen ⊚≈34(6)—Proof of custom and usage of warehouseman as to protection of goods from fire held admissible, though not conclusive.**

Where warehouseman denied negligence for loss of goods in its custody by fire, and averred its conformity to custom and usage of like enterprises, similarly situated as to storage and protection of similar goods, proof showing what such custom and usage was, and warehouseman's obedience thereto, *held* admissible, though not conclusive as to lack of negligence.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by T. P. Whitington against the Cameron Compress Company. Judgment for defendant was reversed and remanded by the Court of Civil Appeals (268 S. W. 216), and defendant brings error. Affirmed.

Henderson, Kidd & Henderson and Chambers, Wallace & Gillis, all of Cameron, for plaintiff in error.

J. W. Thomas, of Belton, and R. B. Pool and W. A. Morrison, both of Cameron, for defendant in error.

NICKELS, J. Whitington delivered to the compress company 98 bales of cotton, receiving from the company, for each bale, a receipt (reproduced in extenso in the opinion of the Court of Civil Appeals, 268 S. W. 216, 217), which, in substance, declared the company had received the cotton for the purpose of "storage and compression" and that it would redeliver the cotton to the legal holder of the receipt ("or pay the market value thereof"), "loss by act of Providence or fire damage excepted (unless insured by this company)"; it being added that the "company is not a public weigher or warehouse." Whitington paid the charges prescribed by the company. The cotton was destroyed by fire, which destroyed other cotton and the compress plant in part. Whitington sued to recover the value of the cotton, predicating his claim upon the obligations evidenced by the receipts. The company answered that it was not a public warehouseman and asserted its exemption of liability for loss by fire (the cotton not having been insured) provided in the receipts. By supplemental petition, Whitington, as cause of the loss through fire, alleged negligence of the company in these respects: Manner of storage; insufficient watchmen; failure to have plant equipped with overhead automatic sprinklers; and failure to cover the cotton with tarpaulin. The company then denied the negligence charged and averred its conformity to the custom and usages of like enterprises in Texas as to the storage and handling and protection of the cotton. Over Whitington's objections the trial court permitted evidence showing, or tending to show, what the custom and usage is and the company's obedience thereto. A verdict for the company was peremptorily instructed. Upon appeal the honorable Court of Civil Appeals for the Third District reversed the judgment and remanded the case. 268 S. W. 216. Writ of error was granted to each party, and the case now presents the questions discussed below.

[1] The receipts' words (wherein liability for loss through fire is precluded) encounter restriction in the inability of the company, as a matter of law, to exempt itself from the consequences of its negligence. The stipulation, therefore, must be considered as if it read: "Loss by fire, not caused or contributed to by the company's negligence, excepted." The contract obligated the company to redeliver the cotton "or to pay the market value thereof" upon demand, etc., unless the cotton had been destroyed by fire caused otherwise than by its negligence. The statute also im-

⊚≈For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

posed that duty. Articles 5619, 5633, R. S. 1925. Since the property was destroyed by fire, the controversy is to be finally solved as the presence or absence of negligence requires.

The fact that the existence of negligence will entitle Mr. Whitington to recover, and its absence will defeat him, gives rise to the main question in the case. That question is: Where negligence (in such respects as are here asserted), as an element, is the foundation of a right, may custom be set up for the purpose of showing that negligence does, or does not, exist? Counsel for the company take the affirmative, adding that, when the custom and conformity thereto have been pleaded and proved, the defense is established. with conclusive effect, at least in the absence of evidence tending to show the custom itself is unreasonable. They cite Houston & T. C. Ry. Co. v. Alexander, 132 S. W. 119, 103 Tex. 594; Taylor v. White (Tex. Com. App.) 212 S. W. 656; Bering Mfg. Co. v. Sedita (Tex. Civ. App.) 216 S. W. 639; Morgan v. Stillwell (Tex. Civ. App.) 247 S. W. 581; Williams v. Gulf Co. (Tex. Civ. App.) 229 S. W. 960; Railway Co. v. Flanary (Tex. Civ. App.) 50 S. W. 726; Express Co. v. Duncan (Tex. Civ. App.) 193 S. W. 411; Thornton v. Daniel (Tex. Civ. App.) 185 S. W. 588. Counsel for Mr. Whitington deny, and say not only that a defense cannot thus be established, but that evidence of custom and conformity is wholly irrelevant. For authority, they rely upon such cases as Gulf, C. & S. F. Ry. Co. v. Evansich, 61 Tex. 3; Railway Co. v. Duncan, 32 S. W. 878, 88 Tex. 614; Railway Co. v. Smith, 28 S. W. 520, 87 Tex. 348; Morgan v. Missouri, K. & T. Ry. Co., 110 S. W. 978, 50 Tex. Civ. App. 420; Texas P. & L. Co. v. Bird (Tex. Civ. App.) 165 S. W. 8; Kirby Lbr. Co. v. Dickerson, 94 S. W. 153, 42 Tex. Civ. App. 504; Railway Co. v. Hawes (Tex. Civ. App.) 54 S. W. 326; Norwood v. Alamo Fire Ins. Co., 35 S. W. 717, 13 Tex. Civ. App. 475.

[2] Rules to assist courts and juries in determining whether or not actionable carelessness exists under given facts cannot be stated without inclusion of the elements of comparison of conduct; at least, the writers have not yet announced rules which exclude those elements. This is illustrated in the ordinary definition of the caution which it was the duty of the company to exercise in the instance under consideration. "Ordinary care," it is said, is:

"Such care and diligence as a person of ordinary prudence and caution would commonly exercise under like circumstances." Martin et al. v. Railway, 26 S. W. 1052, 87 Tex. 117.

The "ordinarily prudent person" is not the perfect automaton or the dolt; he is the general average of mankind, and his identity cannot be established without taking into account the strength and frailties and the practices of all other men. Nor can the particular act which he would do, or the thing which he would omit to do, under given circumstances, be estimated, save upon a consideration of what other like men, similarly conditioned, have done and are doing. There is, therefore, a logical relation between custom and the conduct of any man having to do with the subject-matter of the relevant usage on any occasion. Nevertheless, recognition of this logical extreme is wholly impracticable in the trial of cases, for collateral issues would appear in such number and nature as to becloud the main question and retard its solution. But entire repudiation of the relation would present the illogical extreme and result in the paradox of holding men to a standard of conduct predicated upon comparison with other men and, at the same time, denying them the use of that practical comparison as evidence tending to demonstrate conformity to the standard. Except in respect to such customs and usages as (through age and universality of acceptance) may have become substantive law, we do not believe any well-considered case can be found to support either extreme. Writing on the subject, found in text-books and reports, exhibits, at once, a general effort to find the appropriate medium and an irreconcilable conflict of ideas about it. The lack of harmony is due, we believe, to failure to keep in mind the distinction between the use of such facts as mere evidence and their use in establishing a standard of conduct as a matter of substantive law. 1 Wigmore on Evidence (2d Ed.) § 461.

Where the negligence averred (as here) is in respect to equipment, etc., or lack of certain appliances, or methods of handling goods, or manner of construction of a plant, the conduct of others (amounting to a custom) naturally evidences the tendency of the thing in question; e. g., if a man operating, or about to operate, a powder plant, observed the workmen in other powder factories "wearing felt shoes, he might infer that tendency of the powder was to explode from the concussion or friction of ordinary shoes, and that felt shoes were necessary with reference to obviating this tendency." Wigmore, Id. Such conduct of others in the same business —i. e., under similar circumstances, in respect to the methods and facilities employed —is provable along with other facts showing the "tendency of the thing as dangerous, defective, or the reverse." But it is evidence, and not more (except in rare instances), and the jury is at liberty (if there be evidence of contrary import) to find negligence despite the proof of custom. That function remains in the jury because the substantive law has prescribed the standard of conduct whereby existence, or absence of negligence must be determined, and that standard remains unchanged by proof of the conduct of others similarly situated. Yet, while the

standard of conduct remains fixed, and (as fixed) determinative of the question of liability, the evidence of the relevant customary practices of others is admissible because it throws some light on the nature of the thing in question; i. e., "it indicates what is the influence of the thing on the ordinary person in that situation." Wigmore, Id. When the essential predicate has been laid, the proof ought to be received as evidence; but, once admitted, it should not be allowed to fix the "rule of conduct by which the jury are to be limited and governed." Maynard v. Buck, 100 Mass. 40. Despite expressions of some apparent meaning to the contrary which may be found in our cases, we believe this rule and its application so as to permit the proof of custom alleged (but not as conclusively establishing negligence or the reverse) has ample support in Texas adjudications. Houston & T. C. Ry. Co. v. Cowser, 57 Tex. 293, 303; Gulf, C. & S. F. Ry. Co. v. Compton, 13 S. W. 667, 75 Tex. 667; Gulf, C. & S. F. Ry. Co. v. Harriett, 15 S. W. 556, 80 Tex. 73, 81; Railway Co. v. Williams, 12 S. W. 172, 72 Tex. 159; Railway Co. v. Gatewood (Tex. Civ. App.) 185 S. W. 932; Shelton & Wear v. Wolfe (Tex. Civ. App.) 200 S. W. 901; Magnolia Paper Co. v. Duffy (Tex. Civ. App.) 176 S. W. 90.

In the present case, what has been said operates in favor of each of the parties, and, basically, the argument made by counsel for the company demonstrates the admissibility of certain evidence offered by Mr. Whitington and excluded by the trial court. The argument made in behalf of Mr. Whitington on the point of that testimony's relevancy operates, also, in support of the company's proof of custom.

[3] The testimony of the witness Smith (offered by Mr. Whitington and excluded by the court) should have been admitted, because (as said by the Court of Civil Appeals) it might assist the jury "in determining the value of the overhead automatic sprinkler as a fire extinguisher, and, in the event they found that it was effective as such," it might 'assist "them' in determining whether or not the appellee was negligent in not having such a system on its property." But, at last, the possibility of that "assistance'" rests upon the philosophy stated by Mr. Wigmore in the passages to which references have been made already; that is to say, others, somewhat similarly circumstanced, have installed the devices in question and thereafter fires were fewer or of shorter duration. If the company knew of the device, its use and subsequent lessening of the number or intensity of fires, the trier of fact would be entitled to infer that such knowledge, reasonably calculated, would make it know the probability of a lessened fire hazard if it should, also, use the same precaution. Under those conditions, the jury could rightly predicate an ultimate deduction of negligence upon that

knowledge, plus failure to install the device subsequent to acquest of the knowledge. Or, if it turned out that the company did not actually have the knowledge, negligence could rest in that ignorance of the general practices of others and the historically sequent results which ought to have been known to the "ordinarily prudent" man. Yet plainly the jury would not be compelled, in order to do its duty, to find negligence, unless all other evidence, with a probative force imperatively to the point, excluded every hypothesis of proximate cause save the one omission.

[4, 5] The logical (and, in contemplation of law, the proper) converse is that, where lack of proper devices is charged as negligence, the company may present the evidential fact that such devices as it has are of the kind customarily used with good results by those comparably situated. And, for like reasons, the jury may determine the "weight," or lack of "weight," with which the fact is to be accredited, viewing it in its relation to all other evidence, and use it for whatever it may be thought to be worth in applying the standard of conduct prescribed by law to the actual conduct of the person charged with having omitted due care. Hence, under the case made by the pleading, the testimony, admitted in behalf of the company (and complained of by Mr. Whitington), was relevant and competent, and the ruling of the Court of Civil Appeals (in its opinion on rehearing) in respect to Mr. Whitington's tenth to fourteenth assignments is erroneous. However, as stated, the evidence, though admissible, was not conclusive of the lack of negligence.

It has been remarked that there are to be found in Texas cases expressions apparently conflicting with the conclusions stated above. But the conflict, it seems to us, is more apparent than real. Gulf, C. & S. F. Ry. Co. v. Evansich and Railway Co. v. Smith, supra, cited against the admissibility of proof of custom, were cases which involved the consideration of jury instructions which made custom, etc., the absolute standard of conduct. As a matter of course, such charges were there condemned, but the admissibility of evidence was not before the court as a question essential or material to the disposition of the cases; in fact, except for the mere citation of Gulf, C. & S. F. Ry. Co. v. Evansich, nothing is said in Railway Co. v. Smith touching the probativeness of such evidence. And while it is said, in the Evansich Case, that "such habitual practice * * * would not tend to prove that such failure on the part of appellant was the exercise of due care," we believe the entire opinion makes it clear that the court did not intend to rule upon the question of admissibility. In this belief we find confirmation in cases by the same court, some prior and others subsequent to Gulf, C. & S. F. Ry. Co. v. Evansich, in which custom, as evidence, was treated as competent—e. g., Railway Co. v. Cowser, 57

280 S.W.—34

Tex. 293, 303; Railway Co. v. Compton, 13 S. W. 667, 75 Tex. 667; Railway Co. v. Harriett, 15 S. W. 556, 80 Tex. 73; Railway Co. v. Alexander, 132 S. W. 119, 103 Tex. 594. Railway Company v. Duncan, cited likewise, is distinguishable, in that the act there charged to be negligent was not such as was included in the general subject-matter of the custom referred to. The other cases cited against the admissibility of such evidence were decided by the Courts of Civil Appeals. Amongst them, Morgan v. Missouri, K. & T. Ry. Co.; Kirby Lbr. Co. v. Dickerson, and Railway Company v. Hawes, supra, we believe, support, rather than disavow, the proposition that the proof is admissible, but not as establishing the standard of conduct. The testimony which was held improper in Norwood v. Alamo Fire Insurance Co., supra, related solely to what the witness himself would have done if situated as Norwood was situated—Norwood's conduct being the negligence charged; hence the admissibility of evidence of custom was not before the court. Texas P. & L. Co. v. Bird, supra, in so far as it involved anything touching evidence of custom, was decided upon the "harmless" nature of the "error, if any," and, in passing, the court merely approved the general principles supposed to have been applied in Gulf, C. & S. F. Ry. Co. v. Evansich, Railway Co. v. Duncan, and Norwood v. Alamo Fire Insurance Co., supra.

Alexander v. Houston & T. C. Ry. Co., supra, relied upon to establish the conclusive effect of custom evidence, must be read in the light of the extremely exceptional record before the court, and, when so considered, it does not support the proposition to which it is cited. It was, in reality, a case within the maxim Volenti non fit injuria, for Alexander, the decedent, prior to and at the time of his death, was an employé of the company, and that relation was begun and continued, the proof showed, in contemplation of the custom there alleged and proved. He had been an active party to the custom, had participated in its establishment and continuance, and the very thing which brought about his death was the subject-matter of the practice. From the standpoint of Alexander at the time, the thing which caused the tragedy "was not an unusual or unexpected condition in any respect, nor one from which the employés looked for protection by precautions taken by the employer." Furthermore, the proof, without dispute, showed that "all the employers" and "all the employés" engaged in that business (everywhere) knew of the custom and uniformly followed its requirements. This being true (remarkable as it seems), all persons ("ordinarily prudent," "slightly prudent," and "extraordinarily prudent"), circumstanced as was the railway company, did exactly what the company was charged with doing, and, ex necessitate, the standard of conduct which the law prescribed and the custom (and its observance) were exactly coincident; all possibility of negligence being thereby excluded.

These remarks may be applied, also, to Taylor v. White, supra, for a like absolute universality of custom and observance was there shown. We know, of course, that no one witness, and no particular group of witnesses ordinarily available, could be produced of such qualifications as to entitle him (or them), as against proper objections seasonably made, to show the universality exhibited by the records in Alexander v. Houston & T. C. Ry. Co. and Taylor v. White, and the fact singular to those cases may always be precluded. Nevertheless, the proof was there made, and the courts, of course, took the records as they found them. That universality is absent in the present case. There was, in effect, no other relevant proof in the cases mentioned; hence the whole evidence touching the issues of negligence happened to be, as stated, exactly coincident with the standard of conduct which the law prescribed. Counsel for the company cite other cases from the Courts of Civil Appeals, but, in so far as those opinions tend to indicate a conclusive effect for custom evidence, they embrace misinterpretations of Alexander v. Houston & T. C. Ry. Co. and Taylor v. White, supra, or the expressions were as to questions not essential to the decisions.

The evidence in the record, at least when considered with that which was offered by Mr. Whitington and improperly excluded, presents issues of fact, and we therefore recommend that the judgment of the Court of Civil Appeals, reversing the judgment of the district court and remanding the cause, be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.